## Hone and others, ex'rs, &c. *vs.* Van Schaick and others.

A testator who died leaving seven children, together with J. K. the daughter of a deceased son, and three children of another deceased son, his only heirs at law, surviving him, by his will directed that all his estate, real and personal, should be divided among his heirs, or their legal representatives, and prescribed certain rules to be observed by the executors in making such division. By one of those rules it was provided that in case both parents should be dead, and if their children, or any of hem, had attained the age of twenty-one years, or were married, then that the executors should make an equal partition of the share which would have fallen to such parents, among their children. By another of those rules the testator's granddaughter J. K. was to be considered as standing in the same situation, with regard to her own rights, and the rights of her issue, as the testator's daughters; and all the rules applying to them, their husbands and issue, were to be applied to her and her husband and issue. By a codicil to his will the testator gave unto *each of his grandchildren living at the time of his decease*, the sum of $6000, to be paid to them and each of them, upon their attaining, respectively, the age of twenty-one years, or marrying. At the time of the making of the will and codicil, J. K. was of the age of 21, and was married, and both her parents were dead. All the other grandchildren of the testator were under age and unmarried. At the date of the codicil J. K. had one child, and was *enciente*, at the death of the testator, of a child born after his decease. She subsequently died, leaving four children surviving her. On a petition by C. K. the surviving husband, claiming that each of her two eldest children were to be considered as grandchildren of the testator, under the provisions of his will and codicil, so as to be entitled to legacies of $6000 each, under the codicil:

*Held* that the testator did not intend to give a legacy of $6000 to J. K.; but that he meant to give a legacy of that amount to each of her children who should be in esse at the time of his death, by the designation of grandchildren. And that each of her children who were in esse at the testator's death, was therefore entitled to a legacy of $6000, to be paid to them upon their marriage, or on attaining the age of twenty-one; in the same manner as the other grandchildren.

*Held also*, that the child of which J. K. was *enciente*, at the death of the testator, must be considered as in esse, at that time, for the purpose of entitling such child to the legacy of $6000, as one of the grandchildren of the testator who were then living.

The word *children*, in its natural sense, only embraces the immediate descendants of the person named or described; and does not include descendants of a more remote degree.

Nor does the term *grandchildren*, without something further to extend its natural signification, include *great-grandchildren*.

A testator is to be presumed to have used words in their natural or primary sense; unless there is something in the situation of his family, or in his will, to lead to a contrary conclusion.

Hone *v.* Van Schaick.

But it is a cardinal rule, in the construction of wills, that the intention of the testator is to govern, if consistent with the rules of law. And he is not bound to use any particular form of words to devise or bequeath a legal interest in property, or to designate the objects of his bounty; provided he uses language which is sufficient to show his intention.

The testator's intention is to be ascertained from the whole will taken together, and not from the language of any particular provision or clause thereof when taken by itself.

For the purpose of construction, a will and a codicil may be considered together, and construed as different parts of the same instrument.

An unborn child, after conception, if it is subsequently born alive, and so far advanced towards maturity as to be capable of living, is considered as in esse from the time of its conception; where it is for the benefit of the child that it should be so considered.

THIS case came before the chancellor upon an appeal by C. Kneeland, one of the defendants, from a decretal order of the vice chancellor of the first circuit. John Hone died at the city of New-York in April, 1832, seised and possessed of a large real and personal estate. At the time of his death he left seven children, Isaac S. Hone, Henry Hone, Eliza the wife of M. Van Schaick, Judith the wife of J. Anthon, Joanna the wife of S. S. Howland, Ann the wife of J. Mathews, and Catharine the wife uf C. A. Clinton. He also left surviving him Joanna the wife of C. Kneeland, the daughter of his deceased son Philip S. Hone; and three children of his deceased son John Hone, jun. These seven children and four grandchildren were his only heirs at law. And they, with the widow of the decedent, were the only persons entitled to distributive shares of his personal estate not validly and effectually disposed of by his will. In addition to these grandchildren, the decedent had about five and twenty other grandchildren, the descendants of his surviving sons and daughters.

In July, 1830, he made and published his will, in due form of law, by which he devised to his wife his mansion house for life, and all his furniture and plate, and an annuity of $3600, in lieu of dower. And after directing the payment of his debts, he devised and bequeathed to his executors all his real and personal estate, except his wines and liquors, in trust for the purposes of his will. He then directed his executors to convert the

personal estate into cash and invest the same on bond and mortgage, or in stock of the United States, and to lease his real estate in the city of New-York, and to sell that which was situated elsewhere and invest the proceeds in bonds and mortgages or in stocks; to the end that the rents and profits, interest, and dividends thence accruing might form a general fund, for the purposes of his will. He then directed them to pay out of that fund the annuity to his widow, and to a niece an annuity of $200 for life; and to divide all the residue of that fund, from time to time, as it should arise from the income of his real and personal estate, equally among his heirs, naming them; the whole to be divided into nine shares, and one share to be given to each of his seven children or their legal representatives, one share to his granddaughter Joanna Kneeland, and one share to the children of his other deceased son John Hone, jun., in equal shares, in the manner mentioned in the subsequent part of his will. And he directed such income to be divided and paid to his children and other heirs quarterly, the shares of his five daughters and of his granddaughter Joanna Kneeland to be paid upon their own receipts, for their own separate use and benefit, free from the control of their then husbands or any future husbands; and the share of the children of his deceased son John Hone, jun. to be paid upon the receipt of their mother, or of their legal guardian in the event of her decease, until they respectively arrived at the age of twenty-one, and afterwards upon their own receipts. The seventh, eighth, ninth and tenth clauses of the will of the testator were as follows:

"*Seventhly.* It is my will, and I do hereby direct, that upon the decease of my said sons or either of them, leaving issue, and before the partition hereinafter provided for, the proportion of the income of my said estate directed to be paid to such my sons respectively shall then be paid in such wise as such my son shall, in and by his last will and testament direct; and should such my son or sons die intestate, leaving issue, then the same shall be paid to their respective widows for their support and the support and education of their children respectively should the wives of such my son or sons respectively survive

them ; and if not, then into the hands of a guardian to be duly appointed according to law. And should my said daughters or either of them die before the partition hereinafter directed, leaving issue, then it is my will, and I do direct, that the portion of the said income of my estate herein directed to be paid to such my daughters shall then be paid to their respective husbands, and if such husbands be dead then that the same be equally divided between and paid to such of the children of my said daughters as may have attained to the age of twenty-one years, or may be married, and into the hands of the legal guardian of such of said children as shall be under the age of twenty-one years and unmarried.

*Eighthly.* It is my will, and I do hereby direct, that after the expiration of twenty-one years from the date of this my will, and as soon as my executors, or the survivors or survivor of them shall then deem it discreet, all my estate, real and personal, shall be divided, by my said executors or the survivors or survivor of them, among my said heirs or their legal representatives, such legal representatives to take such share only, among them, as their immediate ancestor would have been entitled to if living.

*Ninthly.* In order to carry such partition into effect according to the intention of this my will, I do hereby direct that my executors, or the survivors or the survivor of them, in making the same, observe and keep these several rules, namely :

1st. In every case where the real estate is so circumstanced that an equal partition thereof can be made among my heirs without converting the same into cash, that then such sale be avoided and the said real estate be allotted among them by such process as may be just and proper.

2d. In making such partition of my said real and personal estate, in case both parents are dead, and their children or any of them have attained the age of twenty-one years, or are married, then that my executors make an equal partition of the share, which would have fallen to such parents, among the children of said parents, share and share alike, and to such as shall have attained the age of twenty-one years, or are married, to

convey to them respectively in fee such real estate as may fall
to them, and to pay to them such part of the personal estate as
may fall to them respectively; and as to such as may not then
be of age and may be unmarried, that they invest their respect-
ive shares of personal property in bonds and mortgages, or in
stock of this state or of the United States, and make proper
demises of their real estate until they attain the age of twenty
one years, or are married, and pay over the interest, dividends,
rents and profits to them or their legal guardians, until one or
other of the said events shall happen, and then to pay over to
them respectively their shares of the personal estate, and to
convey to them respectively, in fee, their proportion and shares
of the real estate.

3d. In making such partition of my estate, if both parents
are living having issue, then with regard to the personal estate
forming the equal share of such parent, my son or daughter,
to invest the same in bonds and mortgages or stock of the Uni-
ted States or of this state, in such manner as to yield the lar-
gest income, and to pay the same into the hands of such my
son or daughter quarterly, in the manner, with the restrictions,
and at the days and times, above directed with regard to the
payments of the income to be made before such partition; and
with regard to the real estate forming the equal shares of such
parents, my son or daughter, that such my executors, or the
survivors or survivor of them, demise the same during the sep-
arate lives of such parents, and pay over the rents in like man-
ner to such my sons or daughters; such payments in the event
of the death of such my sons or daughters leaving widows or
husbands surviving, to be in all things regulated as is above
directed with reference to the payment of the share of the said
income before such partition. And upon the decease of both
parents, then the personal property to be paid over, and the
real estate to be divided, as is above directed in case of the de-
cease of both parents before partition.

4th. In making such partition of my said estate where both
parents are dead, leaving no issue surviving, and where after
such partition, both parents shall die, leaving no issue surviv-

ing, the share of real and personal property which would have fallen to or may have been allotted as the share of the parents, my son or daughter, shall then be distributed according to the statute directing the distribution of the property of intestates among my surviving children and their legal representatives.

5th. The same rules, in all things, must be observed where real estate has been converted into personal estate by sales; the interest and dividend, upon investment, to stand in the place of rents in the demises.

6th. My granddaughter Joanna Kneeland to be considered as standing in the same situation with regard to her own rights, and those of her issue, as my daughters; and all the rules applying to them, their husbands and issue, to be applied to her and her husband and issue.

*Tenthly.* It is my will, and I do hereby direct my executors and the survivors or survivor of them, whenever my said sons shall so require it respectively, or their widows surviving them, and whenever my said daughters shall so require it, or their husbands respectively surviving, that they advance to any of my grandchildren, the issue of such my sons or daughters respectively, such part or portion of my estate, as upon a final distribution of my property would fall to such grandchildren or grandchild upon the death of their parents, as such my sons or daughters, or their respective widows or husbands surviving them may deem discreet; such advance however to be made only where such my grandchild may have attained the age of twenty-one years or be married, and in no event to exceed sixty per cent of the estimated value of such grandchild's share; such estimate to be made for the occasion by my said executors, or the survivors or survivor of them."

By a codicil, made in 1831, the testator increased the annuity, given to his widow by the original will, to $4000; and gave to her his carriages and horses, and an equal participation with his heirs in his wines and liquors. He also increased the annuity to his niece forty dollars; and revoked the tenth clause of the original will, respecting advances to his grandchildren. The third and fourth clauses of this codicil were as follows:

" *Third.* I do hereby give, devise and bequeath unto *each of my grandchildren* living at the time of my decease the sum of $6000, to be paid to them and each of them upon their at·taining respectively the age of twenty-one years, or marrying, whichever event shall first take place. Such payment, however, is in no case to be made without the approbation of the parents of such grandchild, or the survivors of such parents, to be expressed in writing to my executors; it being my wish that after either of said events, the said parent or parents may fix a discreet and proper time for the payment thereof.

*Fourth.* It is my will and I do hereby direct the said last mentioned legacies to be paid out of my personal estate; and that all the rest, residue and remainder of my estate, real and personal, remain subject to the clauses and provisions in my said will expressed; each and every of the said clauses, howev·er, to be and remain in like manner subject to the provisions of this codicil, and to be subordinate thereto."

By a second codicil, made in April, 1832, the testator further increased the annuity to his widow, to $5000; and bequeathed to her and to his son Isaac S. Hone $30,000, upon certain trusts which, as the codicil stated, he had disclosed to them.

Doubts having arisen as to the validity of the will and cod·icils, or of some parts thereof, the executors who had assumed the execution of the trust, filed their bill in this cause, before the vice chancellor of the first circuit, for a judicial construction of the will and codicils, and to obtain a decision of the court as to the validity of the several devises and bequests therein con·tained. The vice chancellor decided and decreed, among other things, that the devise to the executors of the testator, in trust, and all the trusts in the will based thereon; the direction in the will, to the executors to partition the real estate after the expiration of twenty-one years from the making of such will, and every thing in the will which was made to depend upon the execution of such trusts or which was dependant on such trusts or on the powers resulting therefrom, and every thing growing out of the trust and all the annuities payable out of the trust fund attempted to be created by the will, including

the annuity to the widow of the testator, were void.   But he
decided and decreed that the devise of the testator's dwelling
house to the widow, and the bequest to her of certain specific
articles of personal property, in addition to the annuity, in lieu
f dower were valid, provided she elected to receive the same
in lieu of her dower.   He likewise declared and decreed that
the bequest of $30,000 to his widow and one of the sons of the
testator in trust for the purposes referred to in the last codicil,
and the bequest of $6000, in the codicil of 1831, to each of the
grandchildren of the testator living at the time of his decease,
and payable out of his personal estate, were valid.   And the
decree directed the executors to pay the same according to the
directions of the codicils.   Liberty was also reserved to the
parties to apply to the court, from time to time, for further direc-
tions, upon the foot of the decree.   This decree of the vice chan-
cellor was affirmed, by the chancellor, upon appeal ; and that
decision was subsequently affirmed upon an appeal to the court
of dernier resort.   (7 *Paige's Rep.* 222.   20 *Wend. Rep.* 564.)

At the time of the making of the will and codicils, Mrs. Knee-
land, the only child of the testator's deceased son Philip S.
Hone, was of the age of twenty-one and was married, and her
mother as well as her father was dead ; the mother of the three
children of the testator's deceased son John Hone, jun. was then
living ; and all the other grandchildren of the testator were
under age and unmarried.   At the time of the date of the first
codicil Mrs. Kneeland had one child, and she was enciente at
the death of the testator, and had another child born within
four months after that time ; both of which children are still
living, and the appellant C. Kneeland is their general guar-
dian.   She subsequently had two other children, and died in
February, 1837, leaving her husband and her four children,
surviving her ; one of which children afterwards died.

The appellant C. Kneeland presented his petition to the
vice chancellor, pursuant to the reservation in the decree,
stating these facts, substantially, and claiming that his two
oldest children were to be considered as grandchildren of the
testator under the provisions of his will and codicil, so as to be

entitled to legacies of $6000 each, under the first codicil and under the decree in this cause; and praying a direction to the executors to pay over the legacies to him, as the general guardian of his children, for their use and benefit; or if the court should decide that his two oldest children were not entitled to such legacies, as grandchildren of the testator, then the petitioner insisted that his deceased wife was entitled to a legacy of $6000, as one of the grandchildren of the testator living at the time of his death, and that the executors should be directed to pay the same to him as her representative. The vice chancellor decided that neither Mrs. Kneeland nor her children were untitled to any legacy under the codicil of 1831. He therefore denied the prayer of the petition.

*G. Clark,* for the appellant. The two infant children of Joanna Kneeland, in esse at the time of the death of the testator, are to be considered as grandchildren, and each entitled to the legacy of $6000. In the fifth clause of the will the testator enumerates and describes his heirs; and among them he describes the wife of the petitioner as follows: " Joanna Kneeland, wife of Charles Kneeland, and daughter of, and representing, my son Philip I. Hone deceased." And in the ninth clause of the will he prescribes certain rules for the government of his executors, in the execution of his will; the sixth of which rules is as follows: " My granddaughter Joanna Kneeland to be considered as standing in the same situation, with regard to her own rights, and those of her issue, as my daughters; and all the rules applying to them, their husbands and issue to be applied to her, her husband and issue." It is very evident that the testator, by his will, intended to dispose of his whole estate, real and personal; and for all the purposes of that distribution and partition he expressly declared and directed that his granddaughter Mrs. Kneeland (being the only representative of her father, a son of the testator,) should be regarded as a daughter; that she should represent one division of his estate, and that her issue should have the same rights, in all respects, as the issue of his daughters. In other words,

Hone v. Van Schaick.

she was to be considered a *child* of the testator, and her children to be considered as *grandchildren*. The will was made in 1830; and at that time it is manifest that the intentions of the testator in regard to Mrs. Kneeland, were as above stated. In the following year he made the codicil, containing the clause in question; and there is no reason whatever for supposing that he had, in any respect, changed his views concerning her and her issue, or as to the light in which they were respectively to be considered, in the distribution of his property.

It is a well established rule that in construing wills the will and codicils are to be taken together as forming one will, one instrument; and that instrument as made at the date of the last codicil. (5 *John. Ch. Rep.* 343.) The codicil draws down the will to that date; being a republication thereof. (*Powell on Devises*, 683.) The whole will is to be considered, to ascertain the intention of the testator in any particular part. (11 *John. Rep.* 201. *Baldwin's C. C. Rep.* 459. 1 *Gall.* 454.) If then the will is viewed as having been made at the same time with the codicil, and all the provisions of both will and codicil are considered as embodied in one instrument, can there be a doubt as to the fact whether, in giving this legacy of $6000 to each of his grandchildren, the testator meant to include the children of Mrs. Kneeland under that denomination? By the sixth rule for the government of his executors, the testator expressly declared that those children were so to be regarded. And there is no evidence whatever that he intended to exclude them from this legacy of $6000.

The reasoning of the vice chancellor, showing why he thought that Mrs. Kneeland, herself, was not intended as one of the recipients of the $6000 legacy, clearly demonstrates that her *children* were intended as such recipients. His honor says, "another reason for the conclusion (that Mrs. K. was not intended) is, that in previous parts of the will, the testator gives to Mrs. K. an equal share of his estate with his own children, both as regards the immediate income and the capital upon a partition which he directs to be made; putting her in the place of his deceased son, her father, and declaring that she was to

be considered as standing in the same situation, with regard to her own rights and those of her issue, as his daughters, and all the rules applying to them, their husbands and issue to be applied to her, her husband and issue; thus putting her upon the footing of a daughter, with respect to a full share of his estate."· This is very fair reasoning to show that Mrs. Kneeland was not intended; but it is still stronger to show that her children were intended to be included among the partakers of this legacy. The vice chancellor, however, after giving his reasons for excluding Mrs. Kneeland, proceeds to show why he thinks her children are also to be excluded. And here, we submit, his argument fails. He says, "The rules of law are against great-grandchildren taking, along with grand-children, under the general description of grand-children, unless from the context of the will it clearly appears the testator meant to include them." All this is undoubtedly true : and we say that from the context of the will in this case it does clearly appear that the testator intended to include Mrs. Kneeland's children under the denomination of grandchildren. Had he merely said that for all the purposes of his will Mrs. Kneeland was to be regarded as a daughter, that alone would have been sufficient to show he intended that her issue should be regarded as grandchildren. (2 *Eden*, 296.) But he has gone further, and expressly declared that her issue were to be regarded in the same light as the issue of his daughters. And it is difficult to perceive how he could have made known his intention in more explicit language. · This intention, therefore, must govern; and the fact alluded to by the vice chancellor—that the bequest is to grandchildren, that there are persons standing in that relation to the testator and fully answering that description—is inconclusive, so long as the testator has declared that he intended to include others also, under that denomination.

When in the course of a will the testator has explained his own meaning in the use of certain words, the court should take that as their guide, without regard to etymological or abstract meaning of terms, or to different meanings put upon them in adjudged cases. (2 *Munf.* 234. *Hussey* v. *Berkley*, 2 *Eden*

Hone *v.* Van Schaick.

196.) The case last cited was similar to this, in all respects. There the testatrix gave a legacy to a person, calling her a granddaughter, when she was in fact a great-granddaughter. The court decided she was the person meant, because in another part of the will the mother of such person was called a child, although she was in fact a grandchild. The cases are numerous where grandchildren are included under the name of children, and great-grandchildren under the term grandchildren. (*Gale* v. *Bennet*, *Ambler*, 681. 4 *Ves.* 437. *Ambler*, 603. 2 *Vern.* 107, 108. 4 *Ves.* 692.)

The vice chancellor admits that the intention of the testator must govern, and that this is a case of construction as to what was the testator's meaning. And although he concedes that in one part of the will the testator has conceived a design to place Mrs. Kneeland on the footing of a daughter, and her issue on the footing of grandchildren, yet he seems to think that this design was limited to what the testator had then in view. What had he in view? Clearly the disposition of his whole estate. And the rules he established were to govern in respect to the distribution of his whole estate. If then he had a different design in the codicil, in respect to the persons who were to take, would he not have said so, in explicit terms? Would he have left it in doubt and uncertainty? The object of the codicil was to exempt a certain amount of his personal estate from the particular trusts and limitations contained in the will, and to distribute it in a different manner, but to the same families, and in the same capacities, and under the same denominations which he had already declared and prescribed respecting them.

If, however, it shall be adjudged that the clause in the will declaring in what character Mrs. Kneeland and her children are to be considered, is not to be extended to this provision of the codicil, then we say that Mrs. Kneeland must take the legacy in her own right, as a grandchild. Were it not for the clause in the will declaring in what character Mrs. Kneeland and her issue were to be regarded, she must of course have preferred the claim in her own right; and if that clause is to be entirely

Hone *v.* Van Schaick.

disregarded in respect to the provisions of the codicil, then what is to prevent her taking in her own right? It will be said that she cannot have been intended to be included, because the two events on the happening of which the legacy of $6000 was to be paid, had already passed, as to her; that is, she had attained the age of twenty-one, and she had married. It cannot be denied that this fact, if it can be supposed to have been known to the testator, strengthens the other position, that is, that he meant to include her children in this bequest, rather than herself. Yet if that position can by possibility be rejected, then the court will infer that the testator either did not know the fact of those events having passed, as to her, or that they had escaped his recollection; such an inference being far less violent and improbable than the supposition that he meant to exclude her altogether from this provision. And rather than come to the conclusion that she was to be excluded, the court will reject, as to her, the conditions as to the time of payment, as being inconsistent with the general intent of the testator.

In some cases equity will reject express words, to make the will take effect according to the testator's meaning; and will reject inconsistent or contradictory words. (2 *Dessau.* 32, *Com. Dig. Devise N.* 24.) The court is bound to carry the intention into effect; and if it can see a general intention consistent with the rules of law; but the particular mode is not, though that shall fail, the general intention shall take effect. (4 *Ves.* 329.) What was the general intent of the testator in this clause of the will? Clearly, to give each of his grandchildren, (or those he designed to include under that denomination,) living at the time of his decease, the sum of $6000.

The time of payment is a distinct matter, and although postponed to a future period, the legacy was a vested legacy in each of the persons intended; and if the clause fixing the time of payment was inapplicable to some of them, that clause will be rejected, as to those persons. The particular intent, must give way to the general intent. (2 *Bligh's Rep.* 49, 51. 4 *Dev. Rep.* 381. 1 *Yeates,* 342.) The amount of property, or the prudence of the disposition, afford no fair grounds for controlling

a will. (4 *Ves.* 340. 1 *Mer.* 194.) The intent is to be collected from the will itself, and not from extrinsic circumstances. (*Cas. Temp. Talb.* 208. *Com. Dig. Devise N.* 24.)

There is one other circumstance deserving of notice. The testator left nine children, or representatives of children, and there were thirty grandchildren who would be recipients of this legacy of $6000 ; thus taking from the general distribution of the estate near $200,000; (a very considerable portion of the whole estate.) Some of the heirs had eight or nine children : thus by this codicil carrying into such family forty-eight or fifty thousand dollars beyond the general distributive share, while to the family of his deceased son, the father of Mrs. Kneeland, it would carry six or twelve thousand dollars, if our first position is maintained ; and yet it is contended that even this is to be withheld, and that such was the testator's intention. The effect of the construction contended for by the respondents would be this; that although Mrs. Kneeland declaredly represents her father, and is to take one equal ninth part of the estate, in the general distribution, yet that by the operation of the codicil about $200,000 is to be taken out of the estate for the benefit of the other heirs, before such general distribution is made, and that she is to take a share only in the residue, but that neither she nor her children are to have any share of the $200,000 thus taken out. Such a construction is as inconsistent with every notion of equity as it is with the manifest intention of the testator.

*John Anthon,* for the respondents. There are two clauses, the one in the will of the testator, and the other in the first codicil annexed to it, which relate to the subject matter in controversy. The clause in the codicil has been substituted for that in the will, and annuls it. The examination of these clauses, therefore, must necessarily lead to a discovery of the testator's meaning ; which is the object sought in the present case. The clause in the will is the tenth item. The testator had, in previous clauses, disposed of all his property, real and personal, in such way that his *children* were to have the income

Hone *v.* Van Schaick.

during their lives, and his *grandchildren* the principal of the personal, and the fee of the real, estate, after the decease of their parents. The terms children and grandchildren are throughout both the will and the codicil, used according to their proper acceptation, with the greatest care and strictness. And it appears that Mrs. Kneeland, the sole representative of a son, had been fully provided for, and that, from her situation, more advantageously than any other grandchild of the testator. In fixing the meaning of these clauses, the first thing which demands attention is the situation of the testator's family, at the time of making the will. Now when these dispositions were made the testator's family consisted of seven children, (all of whom were over the age of twenty-one, were married, and had issue,) and thirty-one grandchildren, thirty of whom were infants under the age of twenty-one years, and unmarried, and had one or both of their parents living. The remaining grandchild, Mrs. Kneeland, had lost both her parents, whose estate she had inherited as sole heir, was over the age of twenty-one years, was married, and every way well provided for, both in the will and otherwise.

The executors insist that Mrs. Kneeland was not contemplated by the testator, in these provisions of the will and codicil, neither of them being applicable to her case. The object the testator had in view, in making this provision in his will and codicil, and the inapplicability of each provision to Mrs. Kneeland, seems to the executors quite apparent from the whole instrument; and the more particularly so when the two sections are considered in detail. (1.) The will contemplates the case of a grandchild attaining the age of twenty-one in the lifetime of one or both parents. Such grandchild, from the terms of the will, would have an estate depending on the termination of the parent's life estate, but would have no power of immediate enjoyment. (2.) The will also contemplates the case of grandchildren marrying before the age of twenty-one, in the lifetime of one or both parents; who would be of course in the same situation. The first might require the advance of a capital for business, and the second for their establishment

Hone *v.* Van Schaick.

in married life. At the same time, however, many considerations might exist, making it necessary or discreet, on the part of the parents, to withhold any advance. The parents are the first objects of the testator's bounty, and may receive the income of the *whole* for their own necessities; or if such state of need does not exist, the unconfirmed character of the child, or other cogent reasons, may make the creation of such partial independence of the parents indiscreet. Hence the testator places in the hands of his sons and daughters, expressly, the full control over the whole matter—to grant or to withhold, in whole or in part. No grandchild, therefore, can claim any thing under this clause of the will, without the previous assent of the parent whose prudential control is very expressly invoked by the testator.

Now when the peculiar phraseology of the clause is considered, its restricted action in every way on sons and daughters, and their direct issue, and the special call for parental prudence, before it is allowed to take effect, it seems very clear that Mrs. Kneeland is excluded from its operation. All the contingencies had already occurred with regard to her. She had attained the age of twenty-one years, was married, had survived both parents, and the precision of the language used, as well as the absence of all necessity for any additional provision for her, shuts out the idea of Mrs. Kneeland, or *great* grandchildren being within the testator's contemplation. One year after this, the condition of the testator's family remaining the same, he revokes this clause of his will, and substitutes another in its stead, varying from it in no respect except in fixing the *precise* amount to be advanced, ($6000.) All the prudential checks are retained, and even strengthened, by requiring that the parents' approbation, (which the testator, for most obvious reasons, constantly introduces as a prerequisite) should be in writing. It will be observed, upon perusing the codicil, that the same precise use of terms occurs throughout. Words are used in their primary and proper sense; opening no door whatever to the extension of the term *grandchildren.*

If the conclusion of the executors is correct, that the clause in the will already considered gave no rights to Mrs. Kneeland

or her children, it seems very clear that none are created by this substituted clause in the codicil.

The counsel for the appellant insists that a certain other clause contained in the will must lead to a different conclusion. That clause is in these words: " My granddaughter, Mrs. Kneeland, to be considered as standing in the same situation, with regard to her own rights and those of her issue, as my daughters, and all the rules applying to them, their husbands and issue, to be applied to her husband and issue." The whole force of this section will manifestly depend upon the connection in which it stands, and the series of rules expressed therein, to which it refers, and of which it forms a part. The testator, in his will, contemplated a partition of his estate at a certain period, among his children and their representatives, and gave to his executors express and particular rules and regulations to guide them in making such partition. The clause relied upon, and above stated, comes in that connection; and stands as the sixth rule, under the ninth item of the testator's will; which item is entirely devoted to the mode and manner of making such partition. We insist that the peculiar structure of the will requires that this sixth rule should be confined expressly to its subject matter; and that it would be doing injustice to the testator's intentions to extend it beyond the manifest and particular purposes to which it was to be applied.

I do not think it necessary to discuss the other questions contained in the argument of the appellant's counsel; as they are abundantly and satisfactorily disposed of in the opinion of the vice chancellor, and in the cases referred to by him.

THE CHANCELLOR. It is stated in the affidavit in opposition to the appellants' petition in this case, that the deponent believes Mrs. Kneeland inherited a large estate from her father, and that she had expectations from her grandfather, who was a wealthy man. But these circumstances cannot affect the construction of the will or codicil in this case, as it is not shown that the other grandchildren of the testator were destitute of property, or that they had not similar expectations from the

property of their parents, and from their grand-parents other than the testator.   No reason therefore appears for making any discrimination between Mrs. Kneeland, or her children who might be in esse at the death of the testator, and his other grandchildren who might be then in existence.  And it appears to be impossible to resist the conclusion that by the third article of the first codicil the testator either intended to give a legacy of $6000 to Mrs. Kneeland, if she should be living at the time of his death, or that he intended to give a similar legacy to each of her children, who should be in esse at that time, by the description of grandchildren.  The vice chancellor, therefore, appears to have erred in supposing that the testator intended to exclude the issue of his deceased son Philip S. Hone from the class of persons who were to have legacies of $6000 each.

The question then arises as to which of the descendants of Philip S. Hone are entitled.   Mrs. Kneeland was a grandchild of the testator and was living at the time of his death.  She was therefore entitled to the legacy, unless there is something in the will, or in the codicil, to show that in relation to her or her children the testator did not use the word grandchildren in its primary sense.   The word children in its natural sense only embraces the immediate descendants of the person named or described, and does not include descendants of a more remote degree.   Nor does the term grandchildren, without something further to extend its natural signification, include great-grandchildren.   It is true Lord Chancellor Henly, in the case of *Hussey* v. *Berkeley*, (2 *Eden's Rep.* 194,) expressed the opinion that the word grandchildren, without further explanation, would include great-grandchildren, unless there was something to indicate a contrary intention.   But such is not the natural sense of the term grandchildren.   And the testator is to be presumed to have used words in their natural or primary sense, unless there is something in the situation of his family, or in his will, to lead to a contrary conclusion.   It is a cardinal rule, however, in the construction of wills, that the intention of the testator is to govern, if consistent with the rules

Hone *v*. Van Schaick.

of law: That is, the testator cannot create a trust which the law prohibits, or suspend the power of alienation or the absolute ownership of property beyond the period allowed by law; nor create any other interest in property which the law repudiates. But he is not bound to use any particular form of words to devise or bequeath a legal interest in property, or to designate the objects of his bounty; provided he uses language sufficient to show his intention. That intention is to be ascertained from the whole will taken together, and not from the language of any particular provision or clause thereof when taken by itself. (*Crone* v. *Odell*, 1 *Ball & Beat. Rep.* 466.) And for the purpose of construction, a will and a codicil may be considered together and construed as different parts of the same instrument. (1 *Rob. on Wills*, 3d *Lond. ed.* 355.)

In the case under consideration, I think the will and the codicil, taken together, show that the testator did not intend the legacy of $6000 for Mrs. Kneeland, but that he meant to give a legacy of that amount to each of her children; who should be in esse at the time of his death, by the designation of his grandchildren. Although the trusts attempted to be created by the will have been declared void and inoperative, as suspending the power of alienation of the estate beyond the period allowed by law, it is proper to look at the disposition which the testator intended to make of his estate, by his original will, for the purpose of ascertaining the meaning and intention of the provision in the first codicil for his grandchildren. The object of the testator, in his original will, was to create an absolute term of twenty-one years in his real and personal estate, during which time the capital was to be managed and controlled by his executors and trustees, and the income only divided among his children, or their representatives, in case of their deaths; and to give the control of such income to the surviving parent of his grandchildren during that term, if one of the parents was dead. And even after the expiration of the trust term, he intended that his children should enjoy the income of the property, during the continuance of their lives. This of course would leave those who were to have the ultimate remainder in

fee in the estate wholly unprovided for during the lives of their parents ; and such parents could not furnish them any provision for the support of a family out of the capital of the estate, in the meantime. To obviate this difficulty, the tenth clause of the original will provided for an advance to the grandchildren of the testator, who should have married or have attained the age of twenty-one, with the assent of their parents or parent, not exceeding a certain proportion of the capital of the estate to which they would eventually become entitled under the provisions of the will; which the testator supposed to be valid. All the grandchildren of the testator, except Mrs. Kneeland, were then under age and unmarried, and either one or both of their parents were living. Both of the parents of Mrs. Kneeland, however, were dead; and she had become of age and was married, and had one child, at the date of the will. The testator therefore intended to put her and her husband and her children upon the same footing with his daughters and their husbands and children, in relation to the share of the estate which would have belonged to her father and his issue if he had then been living. And to carry into effect the intention of the testator in that respect, under the provisions of the original will, if they had been valid, the sixth subdivision of the ninth clause of the will would have been construed as being applicable to the partial division of the estate contemplated in the tenth clause of the will ; so as to authorize an advance to the children of Mrs. Kneeland, by the description of the testator's grandchildren, upon their marriages or the attaining their majorities, upon the request of their mother if living, or of their surviving father if she was dead.

What was the particular object of the testator in substituting an advance to each grandchild out of the estate generally, upon their marriage or attaining the age of twenty-one, instead of an advance out of the capital of the share of the parent, does not appear. But, that the legacy of $6000 to each grandchild, given by the first codicil, was intended as a substitute for the provision made in the tenth clause of the original will, is evident. For immediately after providing for the payment of such lega-

cies, the testator abrogates the tenth clause absolutely; and directs that the residue and remainder of his real and personal estate shall remain subject to the clauses and provisions of the original will. He also ratifies and confirms the will, in express terms, in every thing which is not revoked and altered by the codicil.

The testator having started with the principle of treating Mrs. Kneeland in every respect as one of his daughters, and placing her husband and her issue upon a footing with the husbands and issue of his daughters, the inference appears to be irresistible that he meant the same principle to apply to this substituted bequest of portions to his grandchildren, during the lives of their parents or of one of them. The provision in the codicil requiring the approbation of the parents, or of the surviving parent, to the payment of the legacy to the grandchild, would be entirely senseless upon any other construction. For the testator must be presumed to know the state of his family, and to have known that both the parents of his grandchild Mrs. Kneeland were already dead. But upon the supposition that he intended to place Mrs. Kneeland and her husband upon the footing of a daughter and a son-in-law, and their children upon the footing of grandchildren, as in the original will, that provision becomes perfectly sensible in relation to this branch of his family as well as in respect to all his other grandchildren. I conclude therefore that each of the children of Mrs. Kneeland who were in esse at the death of the testator is entitled to a legacy of $6000, to be paid when they are married, or upon their attaining the age of twenty-one, in the same manner as the other grandchildren of the testator; and subject to the same restriction, that the capital of the fund is not to be paid over to them by the executors without the written approbation of their now surviving parent, while he continues to live.

Although the second son of the petitioner was not actually born before the testator's death, he must have been begotten many months before that event. He is therefore to be considered as in esse at the death of the testator, for the purpose of entitling him to this legacy; as one of the grandchildren of the

Hone *v.* Van Schaick.

testator then living. For an unborn child, after conception, if it is subsequently born alive and so far advanced to maturity as to be capable of living, is considered as in esse from the time of its conception where it is for the benefit of the child that it should be so considered. *(See Marsellis* v. *Thalhimer*, 1 *Paige's Rep.* 35, *and the cases there referred to.) (a)*

When the case under consideration was before the vice chancellor in 1841, the case of *Cutter* v. *Doughty*, (23 *Wend. Rep.* 513,) was unreversed; and the reported decision of the vice chancellor, (3 *Edw. Rep.* 474,) shows that he relied upon the opinion of Mr. Justice Cowen in *Cutter* v. *Doughty* as perfectly decisive of the present case. Since that time, however, the court of dernier resort has reversed the decision of the supreme court in *Cutter* v. *Doughty*; contrary, I admit, to my own opinion as to the intention of the testator in that case. (7 *Hill's Rep.* 305.) In the present case, however, I have no doubt of the intention of the testator to consider and treat Mrs. Kneeland as a daughter, and her children as his grandchildren, in the distribution of his estate among his descendants, in the first codicil as well as in the original will.

The decretal order appealed from must therefore be reversed; and a decree must be entered declaring the rights of the two oldest children according to this opinion; and directing the executors to pay them their respective legacies when they shall be entitled to the same according to the third clause of the codicil of August, 1831. The costs of both parties upon this appeal, as well as upon the original application to the vice chancellor, are to be paid out of the personal estate of the testator which is undisposed of by his will, and which is in the hands of his executors to be administered.

(a) See also *Mason* v. *Jones*, (2 *Barb. Sup. Court Rep.* 231.)