ALBANY,
Oct. 1827.

Brant
v.
Wilson.

BRANT, *ex. dem.* JAMES WILSON, *against* ELIZABETH
WILSON.

A codicil not expressly revoking a former will of real estate, though it profess an intention to make a disposition of the whole estate different from the will, if it do not do so in fact, but only in part, is but a revocation *pro tanto.* Where there are two divises of the same testator, the last operates as a revocation of the first, only so far as it is inconsistent [*57] with it. As to the residue, the former devise shall stand. A testator devised real estate to his son T. in fee. Afterwards, by codicil, he declared that if T. should die without issue male, the real estate should be disposed of as follows:— T's widow and child to have the use of one half of the real estate, as long as she remained a widow; and after her death or marriage to be equally divided between the testator's two other children and T's child or children. T. died without issue male, leaving a widow and three daughters, who entered and possessed the whole. *Held,* that half of the land passed under the will to the heirs of T. till the death or marriage of the widow; and that the use of the other half passed by the codicil to the widow and children, during the same period; the will as to an estate in 1-2 the land for that period not being revoked.

EJECTMENT for land in the town of Rye, in the county of Westchester; tried at the circuit in that county, October, 1825; when a verdict was taken for the plaintiff, subject to the opinion of this court on the following case:

On the 28th of April, 1812, Thomas Wilson being seised in fee of the premises in question, made his will and devised them to his son Thomas M. Wilson in fee. On the 2d of May, 1812, Thomas Wilson made a codicil reciting the devise to Thomas M., and declaring as follows: "That if my son Thomas M. Wilson shall decease without leaving any male issue, the real estate given to my son Thomas shall be disposed of as follows: and I do dispose thereof, that his widow and child shall have the use of one half of the real estate as long as she remains a widow; and after her death or marriage, to be equally divided between my son James and my daughter Elizabeth, and my son Thomas Wilson's child or children. The testator *died [*57] June 1st, 1812, leaving James Wilson, the lessor of the plaintiff, Elizabeth Park, and Thomas M. Wilson, his only children and heirs at law. On the death of the testator, Thomas M. entered, and continued seised till his death without male issue, September 1st, 1824, leaving Elizabeth Wilson, the defendant, his widow, and three daughters surviving, who all reside on the premises: the defendant still continues a widow.

*T. A. Emmet,* for the plaintiff.

*P. A. Jay,* for the defendant.

*Curia, per* WOODWORTH, J.   It is probable the testator intended, that in the event of Thomas M. dying without issue male, his widow and children should have the use of half the estate until the happening of a certain contingency, and that when that occurred the whole real estate should be divided between James, Elizabeth, and the children of Thomas M.; and that the use of the other half of the premises, until the death or marriage of the widow, should belong to James and Elizabeth.  The question here is, whether the words of the codicil will, in judgment of law, admit of carrying into effect this probable intent.

In the first place, it is to be observed that, as the will gives Thomas M. an absolute estate of inheritance, it cannot be defeated unless the codicil operates as a revocation. It may profess, in a certain event, to divest the estate given to him; yet, if it fails to perform that office as to a part of the premises, to that extent, it cannot operate as a revocation of the will; but leaves it in full force *pro tanto.*  If the codicil had expressly revoked the devise in the will, then the right of the heirs at law would be clear: but I do not understand it in that light; and cannot say, from the expression used, that the testator so intended.  It seems to me rather an intent, in case Thomas M. had no male heirs, to dispose of it to other persons.  The testator has given one half in proportions different from what the individuals would have taken as heirs at *law.  The will is to be considered as revoked, so far as the testator has disposed of the premises to other persons.  The interest remaining and not disposed of by the codicil, passes either to the heir at law, or under the will.  I have already observed, that by the codicil, the intent was to give the estate devised to Thomas M. to other persons.  The testator did not intend to die intestate ; at least there is no evidence upon which to found a presumption, that the part undisposed of by the codicil was intended to vest in the heirs at law.  What portion of the estate passed by the codicil?  It is plain that the use of one half remains in the widow and children until her death or marriage.  When either happens, the whole estate is to be divided between James and Eliz-

abeth and the children of Thomas M. The words are "the real estate shall be disposed of as follows," which comprehends the whole. Then after giving the use, the words are, "after her death or marriage to be equally divided." What is to be divided? Is it the half of the real estate, the use of which is devised to the widow and children for a certaiຸ time, or does it not more properly refer to the whole estate? I think the latter is the construction; because it accords with the declared intent expressed in the prior part of the codicil. The words "to be divided," may refer to either; but the intention derived from what it first expressed must control; and the division that is to take place comprises the whole estate. In the mean time, the use of the other half of the real estate, from the death of Thomas M. to the death or marriage of his widow, is not noticed in the codicil; and under that the defendant has no claim. In order to succeed, however, the plaintiff must show a present interest. Has he done so? If I am correct·in the conclusion that the will was not revoked, except so far as the codicil has disposed of the subject matter to others, it follows that the interest not devised by the codicil, passed by the will, and cannot be claimed by the plaintiff.

The rule of law seems to be, that a subsequent devise of land must be inconsistent with a prior devise of the *same land, or the first will stand as a good subsisting devise. Roberts, in his treatise on wills, says the rule is established that the contents of the second will must appear to be inconsistent with the dispositions of the former will to operate as a revocation, and that if part is inconsistent, and part is consistent, the first will shall only be revoked to the extent of the discordant dispositions. (Rob. on Wills, 265.) This doctrine is supported in *Harwood* v. *Goodright*, (Cowp. 87,) and *Hitchens* v. *Basset*, 1 Show. 537.) Full effect is given to this principle in the case before us. The will is revoked except as to the use of half from the death of Thomas M. to the death or marriage of the defendant. As to the intention to dispose of the whole estate in a different manner, if Thomas M. had no male issue, it was

[*59]

never executed. In *Thomas* v. *Evans*, (2 East, 488,) the doctrine is fully recognized, that an express intention to revoke would not operate as an actual revocation. Before the statute of frauds, it was held in *Cranvel* v. *Sanders*, (Cro Jac. 497,) that if a man makes his will in writing of land ; and afterwards, upon communication, says that he has made his will, but it shall not stand, or "I will alter my will," these words are not any revocation of the will; but only a declaration of what he intends. And in *Thomas* v. *Evans*, lord Ellenborough observed that the cases before the statute of frauds, wherein parol declarations of an intention to revoke in future were holden not to amount to a present revocation, were all applicable. The only difference introduced by that statute was, to require certain formalities in the making and revoking of wills; but the same sense, conveyed now in writing, as before the statute might have been conveyed by parol, will have the same operation. In the case under consideration, there is no express revocation; although there was an undoubted intention to have made a disposition altogether inconsistent with the first will. The testator commences by saying what he intends to do : "The estate given to Thomas shall be disposed of as follows." He then proceeds to carry the intention into effect. As far as he goes the will is revoked. But where *it is left untouched it remains valid; because the testator (probably through misapprehension or mistake) has not done all that he declared he would do. He has omitted a part which the court cannot supply, and so far has left the will in force.[1]

Judgment must, consequently, be rendered for the defendant.

Judgment for the defendant.

[1] An indorsement made on a will, indicating an intention to alter or modify it at a future day, is no revocation. *Ray* v. *Walton*, 2 A. K. Marsh. 73.

The failure of one, who is informed of the destruction of his will, to publish another, furnishes a *prima facie* presumption of intention to revoke the will destroyed, which may be rebutted by evidence of the same grade, such as the declarations of the testator himself. *Steele* v. *Price*, 5 B. Mon. Rep. 53.

After a will is duly executed, the making of another will, which is not duly executed, is no revocation of the first. *Breathitt* v. *Whittaker's ex'rs.*, 8 B. Mon. Rep. 530.

A subsequent will does not revoke a former one, unless it contains a clause of revocation, or is inconsistent with it. And where it is inconsistent with the former will, in some of its provisions merely, it is only a revocation *pro tanto*. *Nelson* v. *McGiffer*, 3 Barb. Ch. Rep. 158. Vide 8 Cowen's Rep. 56.

Where a subsequent will is made, and there is no proof that it contained any clause revoking a former will, as in cases where the contents of the last will cannot be ascertained, it is not a revocation of the former will. Ibid. Amer. Ch. Dig., vol. 3, pp. 560, 561, No. 271, 285, 286, 289, 290.