## SUPREME COURT.

### JAMES WILSON agt. MARY L. WILSON and others.

It was well settled, previous to the Revised Statutes, that the words "die without issue," and "die without leaving issue," (respecting which there was no distinction,) in a devise of real estate, imported an *indefinite failure of issue,* and not the failure of issue at the death of the first taker.

And since the statute of 1786, abolishing estates tail, the result has been that a limitation of a future contingent estate *upon failure of issue,* is void, both as a *contingent remainder* and an *executory devise;* and the *first devisee takes the whole estate.*

But courts and judges have been astute to find, and prompt to seize, any reason in a will for applying a different construction, and for holding that the testator not only intended, but legally manifested his intention that the *devise over should take effect upon the death of the first taker.*

In this case the *codicil* to the will upon which the questions arose, after reciting the devise in the will, was in these words: "Now I do order that if my son Thomas M. Wilson shall decease without leaving any male issue, the real estate given to my son Thomas shall be disposed as follows; and I do dispose thereof, that his widow and child shall have the use of one-half of the real estate as long as she remains his widow, and after her death or marriage it shall be equally divided between my son James, my daughter Elizabeth; and my son Thomas M. Wilson's child or children."

*Held,* that from the language of the will (codicil) the inference was plain that the testator intended that the estate limited upon failure of male issue of Thomas M. Wilson, should *vest successively at the death of Thomas.*

Also *held,* that Thomas M. Wilson took a defeasible fee in the whole of said real estate, and that upon his death without male issue, and the death of his widow, the (whole) land passed by executory devise to James Wilson, Elizabeth Park, and the children of Thomas M. Wilson in fee.

Elizabeth Park, after the death of the testator, executed and delivered a *release* and quit-claim to Thomas M. Wilson, of all claim, or right of claim, which she then had, or which might thereafter arise to her, or to her heirs or assigns, to the real estate in question by virtue of the codicil.

*Held,* that this release of her contingent right, to one who had the entire and exclusive possession and present estate, brought it within the case of *Miller* agt. *Emans,* (19 *N.Y.R.,* 384,) and vested in Thomas M. Wilson all her contingent right and interest, which afterwards became a vested estate in him.

*Held* also, that this contingent right and interest was devisable and *assignable* by Thomas M. Wilson, (and which was actually mortgaged by him in his lifetime,) and on the death of Thomas M. Wilson his children took, as his heirs, and not as purchasers, the *fee* of the one-third of the lands to which Elizabeth Park would have been entitled but for her release.

*Second District General Term, November,* 1860.

*Present,* LOTT, BROWN and EMOTT, *Justices.*

THIS action was brought for the partition of a farm of land in the county of Westchester. It comes up by separate appeals by the plaintiff and several of the defendants, from different portions of the judgment, which was rendered at special term, upon the report of a referee, who had been directed to take proof of the title and of the other matters stated in the pleadings.

JAMES W. WILSON, *for plaintiff.*

DAVID P. HALL, *for defendants, Wilsons and Reynolds.*

JAMES N. PLATT, *for Purdy and others.*

COE & WALLIS, *for defendant Mead.*

By the court, EMOTT, Justice. The referee reported both his conclusions of fact, and the evidence taken before him, and this evidence is part of the case upon which the appeals were argued. There were some questions of fact raised and discussed at the argument before us, and I have examined the pleadings and proofs with reference to these, as well as the other points in the case. It may perhaps admit of some doubt whether we can consider these questions, or the correctness of the conclusions of the referee or the court at special term, as far as they were purely conclusions of fact. But waiving any such difficulty, if there be any, I am satisfied with the results obtained in these particulars in the court below, and I shall assume and will proceed to state the facts as I understand them to be, and to have been found at the trial.

1. The lands in question were owned by Thomas Wilson, who died in June, 1812, leaving a will made on the 28th day of April in that year, by which he devised all his lands to his son, Thomas M. Wilson, in fee, charged with the

payment of his debts, with a provision for his wife, and with a legacy to another son, James Wilson; but also leaving a codicil to this will, made on the 2d day of May, 1812. This codicil recites the devise in the will, and proceeds: "Now I do order that if my son, Thomas M. Wilson, shall decease without leaving any male issue, the real estate given to my son Thomas shall be disposed as follows, and I do dispose thereof that his widow and child shall have the use of one-half of the real estate as long as she remains his widow, and after her death or marriage, it shall be equally divided between my son James, my daughter Elizabeth, and my son Thomas M. Wilson's child or children." When the testator, Thomas Wilson, died, he left surviving him, his son, Thomas M. Wilson, and James Wilson, who is the plaintiff in this action, and a daughter, Elizabeth Park. Thomas M. Wilson entered under the devise and continued in possession of the lands until his death. He died in 1824, without male issue, but leaving a widow, who died in 1857, and three daughters, Mary L. Wilson, Ann Elizabeth Wilson, and Sarah S. Reynolds, who are still living, and are made defendants to this action. Elizabeth Park also survived her brother, Thomas M. Wilson, and died in 1856, leaving a son, a daughter, and the children of a third daughter, all of whom are parties to the suit. The first question in the cause arises out of these facts: It is what estate Thomas M. Wilson took under the codicil, and what are the rights of the parties to this action representing the devisees named in the codicil in consequence?

2. It further appears that in June, 1812, after the death of the testator, Thomas Wilson, Elizabeth Park executed and delivered a release and quit-claim to Thomas M. Wilson of all claim or right of claim which she then had, or which might thereafter arise to her or to her heirs or assigns, to the real estate in question by virtue of the codicil. Upon

this, question is raised whether the instrument was effectual to pass any, and what, estate to the releasee.

3. It further appeared that on the 1st day of July, 1823, Thomas M. Wilson mortgaged to James Wilson, the present plaintiff, 24 acres, part of the land now in question, to secure the payment of $1561.25, which mortgage was duly recorded on the 17th of February, 1825. After Thomas M. Wilson's death, James Wilson, in consideration of $1525.71, paid to him by Richard Mead, assigned this indenture of mortgage to said Mead. The assignment contained no covenants, but it purported to assign, transfer, and set over, not only the mortgage, but "the land and premises described therein." Richard Mead is dead, and his administrator, Thomas A. Mead, is made a defendant, and asserts and asks payment of this mortgage. Whether it can be enforced, and against what interest or estate of either of the parties to the action, is the other principal question before us. I will proceed to consider these three questions. There are some other points of controversy of a minor character, to which it may be necessary to allude.

It is well settled that the words "die without issue," and "die without leaving issue," in a devise of real estate, import an indefinite failure of issue, and not the failure of issue at the death of the first taker. It has sometimes been attempted to make a distinction between the words "without issue," and "without leaving issue," but the attempt has not been successful. (See *Duentry* agt. *Duentry*, 6 *T. R.*, 307; *Penny* agt. *Agar*, 12 *East*, 253; *Romilly* agt. *James*, 6 *Taunt.*, 263; and *Forth* agt. *Chapman*, 1 *P. Wms.*, 663.) The case of *Patterson* agt. *Ellis*, in the court of errors of this state, (11 *Wend.*, 259,) asserts the doctrine broadly, and is conclusive against any distinction between "without issue" and "without leaving issue," as to their legal effect before the Revised Statutes. Chief justice PARSONS declares the rule in the same way in *Ide* agt. *Ide*, (5 *Mass. R.*, 500.)

Since the statute *De Donis*, (13 *Edw. I.*,) and the statute

of wills, a devise to a man, and if he die without issue or without leaving issue, then over, gave the first devisee an estate tail with a contingent remainder upon the determination of the first estate, by the failure of issue in tail at any period. The act of the legislature of this state, of February 22d, 1786, abolished estates tail, and declared that in all cases when any person would but for the act become seized of the lands in fee tail, he should be adjudged to be seized in fee simple absolute.

The effect of this was to cut off contingent remainders limited upon failure of issue after an estate tail, since they could not be limited upon a fee simple, which exhausts the entire estate. A limitation of lands upon failure of issue of the first taker imported an indefinite failure of issue, as has been already stated, and therefore such a limitation could not be supported as an executory devise, because it would not necessarily vest within the period beyond which such an estate could not extend at common law, viz., a life or lives in being, and twenty-one years and nine months afterwards. The result was that since the statute of 1786, a limitation of a future contingent estate upon failure of issue was void, both as a contingent remainder and an executory devise, and the first devisee took the whole estate.

These propositions do not require authorities to sustain them. Besides the cases which have been referred to, and the older English authorities which are cited in them, it is sufficient to mention *Jackson* agt. *Bellinger*, (18 *J. R.*, 368,) and the two series of cases upon the Eden will, which are, or ought to be, familiar to every lawyer; and some of which I will presently refer to for another purpose. (*Anderson* agt. *Jackson*, 16 *J. R.*, 332; *Lion* agt. *Burtis*, 20 *J. R.*, 483; *Wilkes* agt. *Lion*, 2 *Cow.*, 338. See also *Fosdick* agt. *Cornell*, 1 *J. R.*, 440; *Jackson* agt. *Staats*, 11 *J. R.*, 337; *Jackson* agt. *Thompson*, 6 *Cow.*, 178; *Patterson* agt. *Ellis*, 11 *Wend.*, 259; *Cutter* agt. *Doughty*, 23 *Wend.*, 513; *Lott* agt. *Wyckoff*, 2 *Comst.*, 355.)

The construction which was given to the words " dying without issue" in wills, obviously in many cases defeated the intentions of the testator, and it is doubtful if these words were often used by any uninstructed person, with a sense of their true legal import and effect. Courts and judges have therefore been astute to find, and prompt to. seize any reason in such instruments for applying a different construction, and for holding that the testator not only intended, but legally manifested his intention that the devise over should take effect on the death of the first taker. Since the case of *Fosdick* agt. *Cornell*, (1 *J. R.*, 440,) it must be said to have been determined in this state that when there was a devise to two or more, and upon the death of either without issue, then to the survivor or survivors, and the devise over to surviving devisees, were sufficient to show that the testator intended a definite failure of issue, that is at the death of the first devisee, and to make an exception to the rule by which the meaning of the words " dying without issue" is settled. A devise to surviving devisees upon the death of the first devisee without issue, was therefore a good executory devise upon a qualified or determinable fee. This doctrine was applied by the supreme court to the will of Medcef Eden, in the case of *Anderson* agt. *Jackson*, and it was affirmed by the court of errors in that case, notwithstanding the very able opinion of Chancellor KENT to the contrary, (16 *J. R.*, 382, 397.) That learned jurist afterwards repeatedly expressed his disapprobation of this decision, but the courts adhered to it notwithstanding, and it has long been too well established to be overturned, at least by this court.

The case of *Fosdick* agt. *Cornell* was approved, and followed in *Jackson* agt. *Staats*, (11 *J. R.*, 337;) and that of *Anderson* agt. *Jackson* was followed in the other Eden cases, and was deliberately re-affirmed in the court of errors in *Wilkes* agt. *Lion*, (2 *Cow.*, 333.) In *Cutter* agt. *Doughty*, 23 *Wend.*, 513,) Judge COWEN says :. " It is too late to con-

tend that a devise to the survivor or survivors of another upon his death without issue is void, as a limitation upon an indefinite failure of issue. The ' survivors' qualified the technical or primary meaning of the words ' dying without issue,' being considered the same as if the testator had added ' living at the time of his death.' "

In the case before us, the devise is to the effect that, if Thomas M. Wilson, the first devisee, should die without leaving male issue, the lands are to go the one half to his widow, during her life or widowhood, and upon her death or marriage, the real estate shall be equally divided between James, Elizabeth, and the children of Thomas. It is contended that this case " differs from those which have been cited, and is not controlled by the Eden cases," because the devise here is not expressed in the same terms, and is not to survivors, and because a portion of it at least is to persons who might come into being after the will took effect, the children of Thomas M. Wilson. This cannot, however, make any difference in the principle which controls the case in this particular, or in the result.

The word survivors is not insisted upon in the cases as a technical word, which is to change the meaning of the limitation. Any language which indicates the time when the limitation is to take effect, is sufficient. The rule which affixed a certain meaning to the words " dying without issue," was a rule of property, and it was steadily adhered to as such. But could it be controlled by a contrary intention properly manifested by a testator ? and all that is sought is legal evidence of such intention. In the leading case of *Fosdick* agt. *Cornell*, the court argued the intention of the testator from the whole will, and the use of the word survivors was only mentioned as one circumstance. In *Jackson* agt. *Billinger*, (18 *J. R.*, 380,) the observations of Chief Justice SPENCER are very pertinent to show the reason of the decisions, and in *Lion* agt. *Burtis*, (20 *J. R.*, 483,) the same judge is equally explicit. He says there that

since our statutes, " any expression" denoting an intention to limit the failure of issue to a life in being, is sufficient to repel the implication that a limitation of an estate over, in the event of the first devisee dying without issue, was meant to be an estate tail.

Nor is it the fact merely that the devise over is to persons who are in fact *in esse*, which is the controlling circumstance. That fact shows that the devise must have been intended to take effect upon the death of the first devisee. This is the material feature, and it is sufficient to discover any clear evidence of this in the will.

In the present case there is a devise, upon the death of Thomas M. Wilson without male issue, of one half the lands to his widow for life or widowhood, and upon the termination of this estate the ulterior devises are to vest in possession. It is obvious that the testator contemplated the period of the death of Thomas M. Wilson as the period when the limitation over should take effect. There is a life estate limited to a person *in esse* upon the failure of issue of the first devisee, and a subsequent division of the property directed at the termination of the life estate.

Without indulging in conjecture, and without going beyond the language of the will, the inference is plain that the testator intended that the estate, limited upon failure of male issue of Thomas M. Wilson, should vest successively at the death of Thomas.

Another question was argued, whether the devise over was of the whole or only half the estate. The language of the codicil is " upon her death or marriage it shall be equally divided," &c.; and the heirs of Thomas M. Wilson contend that the codicil only revoked the will as to half the estate, and that Thomas M. took an absolute fee by the will in the residue. I think, however, that the testator manifestly intended to revoke the whole devise, and to give all the property in one direction when he made the codicil. He disposes of the whole of it, or intends to do so by the

language first used in the latter instrument, and the word " it" must be construed by that intention, and in reference to the property described in the first part of the clause, and is not to be restricted to the one half given to the widow of Thomas for life. This is the construction approved by Judge Woodworth when this will was before this court in 8 *Cow.*, 56. Although perhaps the point was not involved in the decision of that cause, the observations of the judge are pertinent and satisfactory.

I conclude, therefore, that Thomas M. Wilson, by the will and codicil of his father, took a defeasible fee in the whole of these lands, and that upon his death without male issue, and the death of his widow, the land passed by executory devise to James Wilson, Elizabeth Park, and the children of Thomas M. Wilson in fee, unless the share of Mrs. Park had been previously conveyed by her release, which is the next question in this case.

The children of Mrs. Park deny the existence of the release which their mother is alleged to have executed. But I concur with the referee and the judge at special term, that it is sufficiently proved to have been made, and to have all the incidents necessary to such a paper. As to the consideration, which is also disputed, the observations of Judge Lott appear to me conclusive. It is the most reasonable and natural explanation of the transaction that Thomas M. Wilson refused to accept the devise and pay off the charges, and in particular the debt of his father to the husband of Mrs. Park, unless she would release her contingent interest in the property to him. As to fraud or imposition in procuring this instrument, if that issue were raised, there certainly is not enough in the evidence to justify a court in setting aside such a solemn and deliberate act.

When the release was executed, Thomas M. Wilson was in possession of the lands under his father's will and codicil, under which he took a determinable fee. The execution

of the release may have been a part of one transaction with the acceptance of the devise, that is, the one on condition of the other, as has been already intimated, but in legal contemplation one preceded the other. Mrs. Park had in the lands a possibility that title might vest in her in the contingency of the death of her brother without male issue. Her right was more than an expectancy, as if an heir presumptive, for it depended only upon one contingency, and not very remote, and could not be defeated by the volition of any other person.

The referee held that such a right could not pass by a release upon the authority of Eden cases, especially *Jackson* agt. *Waldron*, (13 *Wend.*, 178.) The judge at special term considered that the decision in that case was no longer the law, since the recent case of *Miller* agt. *Emans* in the court of appeals, (19 *N. Y. R.*, 384.) Judge Selden, in the opinion which he delivered in the latter case, remarks that the case before him may be distinguished from *Anderson* agt. *Jackson*, (16 *J. R.*, 382.) I confess I do not well see how in any particular in which that case was material, or why these two cases should be distinguished, since the doctrine of *Anderson* agt. *Jackson* is precisely that which is assumed on all hands, and the basis for the decision in *Miller* agt. *Emans* as to the character of the estates of the parties. I am inclined to think that the learned judge meant to say that the case before him could be distinguished from *Jackson* agt. *Waldron*, (13 *Wend.*, 178.)

I apprehend the nature of the right attempted to be released or assigned is the same in *Jackson* agt. *Waldron*, and in *Miller* agt. *Emans*. In both there was an executory devise contingent upon survivorship and the failure of issue. There is a difference in favor of the greater certainty or the less remoteness of the contingency in the present case, because it does not depend upon survivorship, but upon the determination of the prior fee only. There is also a difference in the three cases in respect to the conveyances. In

*Jackson* agt. *Waldron* the conveyance was made by two persons who were entitled to determinable fees, with an executory devise to the survivor, and made to a third person. In some of the discussions upon this case it was asserted that Winter, the assignee, or grantee, was in possession, or that he should be assumed to have been so, in contemplation of law, when this release was made. The prevailing opinion in the court of errors discusses the case, and denies the validity of the conveyance, on the assumption that it was made to a party in possession, or entitled to a present estate. If it be assumed on the contrary that the conveyance in that case was made to a stranger, it would undoubtedly make a wide difference between that case and either *Miller* agt. *Emans* or the case before us on the present point. Judge STRONG, in his opinion, says, that the case of *Jackson* agt. *Waldron* did not raise the question whether one of the brothers could have released to the other, because the assignment was a conveyance to a stranger, not a release to one having a prior estate. But Judge DENIO, in his dissenting opinion, very forcibly argues that Joseph Eden conveyed his determinable fee by the assignment to Winter, and Medcef could as well release to Winter, his brother's grantee, as to his brother.

In the case of *Miller* agt. *Emans,* a certain number of several persons seized of an estate, which Judge SELDEN holds must be assimilated to a joint tenancy, executed a conveyance in the form of a release and quit-claim to their co-tenants who were in actual possession, and this release was held to pass both their present estate and their future right.

In the case at bar, one of three or more persons entitled to a contingent right upon the death of Thomas M. Wilson without male issue, released to Thomas M. Wilson, while in possession, and entitled to the precedent estate. This is a case entirely distinguishable from that which arose under the Eden title, if Judge STRONG's construction of that case

be correct. It is stronger in favor of the conveyance than that case, and I am unable to see any valid distinction in principle between it and the case of *Miller* agt. *Emans*. The counsel for the heirs of Mrs. Park suppose that the release of the future estate in the Emans case was upheld by the court of appeals because it was between joint tenants. The argument, however, misapprehends the decision. The fact of a joint seisin and possession was material to the effect of the conveyance upon the present, and not the future estate. The release was held to operate upon the present estate of the grantee "*pour mitter l'estate.*" It contained no words to bring it within the statute of uses, and as it did transfer the possession it would have been inoperative upon the present estate unless made to a party in possession. The grantees were in possession of the whole premises, because they were seized "*per un et per tout*" as joint tenants. It did not appear that they were in the exclusive possession, or in possession otherwise than by their estate; so far as that conveyance passed a present estate it was necessary to invoke this reasoning to support it. The validity of the conveyance depended upon the possession of the grantees, and that rested entirely upon their estate as joint tenants. But the release in the present case operated exclusively in another manner, that is, by way of enlargement. It is unnecessary to consider whether a release of one who has a future or contingent estate would be valid if made to one who has a mere possession of the premises without title. Here the release is to one who has the entire and exclusive possession and present estate. Nor is it a question of conveyance between two co-tenants who are seized of several present estates, but of a release by one holding a future interest or right, to him who hath all the present right both of property and possession which could belong to any number of joint tenants. If this deed is otherwise sufficient, it is not open to any objection that it cannot operate by transmutation of possession, or under the statute of uses, because

it is made to a person already in sole and rightful possession. Nor is there any difficulty with such a conveyance under the statutes of champerty; that is abundantly clear from all the cases. The only question upon it would have been upon the nature of the interest to be affected, and its releasibility. I think this point is definitely settled in the case of *Miller* agt. *Emans*, both by the judgment and the opinions. I have shown that the cases cannot be distinguished in principle on this point; I will only add two sentences from the opinions to show the length to which the judges who gave them were disposed to go: Judge SELDEN said, (*p.* 394,) "I think it will be found that any and every contingent right, however uncertain, may be released to a party already seized of a present estate in possession;" and Judge STRONG said, (*p.* 397,) "Where there is an existing right in one which cannot be defeated by the volition or action of another to a future estate upon a contingency, there is something upon which a release might operate." I think the case could be distinguished from *Jackson* agt. *Waldron*, and the validity of the release of Mrs. Park upheld by the doctrines of that decision, as it may be necessary for me to show in another part of the judgment. It is sufficient, however, at the present, that it fall within *Miller* agt. *Emans*.

I concur with my associate who heard the case at the special term, that the release of Elizabeth Park was valid and effectual to vest in Thomas M. Wilson all her contingent right which afterwards became a vested estate in him.

The third principal question in the case arises upon the mortgage made by Thomas M. Wilson on the 26th day of June, 1823. Thomas M. Wilson, in order to pay or secure the payment of the two legacies given by the testator, and charged upon the lands which he took under the will and codicil, one of seven hundred and fifty dollars to the widow, and one of like amount to James Wilson, executed a mort-

gage for $1,561.25, to James Wilson. This mortgage covered by its terms twenty-four acres, part of the lands devised by Thomas Wilson. At the time of the execution of this mortgage, Thomas M. Wilson was seized of a determinable fee in the lands mortgaged, and that estate determined at his death. As the referee understood the law, this was his only interest or estate. But the release made by Mrs. Park being valid, Thomas M. Wilson had also the contingent interest of Elizabeth Park in the ultimate fee. That interest became vested in his heirs absolutely by the happening of the contingency upon which it depended. Thomas M. Wilson died on the 1st of September, 1824, and then of course his estate under his father's will determined. His children took, as his heirs, and not as purchasers, the fee of one-third of the lands to which Mrs. Park would have been entitled but for her release. That interest in Thomas M. Wilson after the release was devisable and descendible. It must have been descendible, or the release would have been wholly ineffectual, and if descendible, it was, I take it, devisable. In the opinion of Senator TRACY, in *Jackson* agt. *Waldron*, and by the authorities which he cites, it is shown that descendible and devisable are convertible terms in respect to contingent interests; the interest of Medcef Eden was not descendible, because his death would determine the very possibility which would direct the estate to him, and it would be absurd that he should be allowed to transmit through his death what his death put an end to. But the devise in the codicil of Thomas Wilson, sen., is otherwise in this respect. It is, I take it, beyond doubt, and not disputed by any of these parties, that the devise over upon the death of Thomas M. Wilson, without male issue, was of a fee. If the contingency happened, and the estate vested, it became a fee, and before the happening of the contingency the expectant interest of the devisee in respect to its qualities of transmission and transfer assimilated to a contingent remainder.

There is, obviously, a wide difference between the interest devised to Elizabeth Park by this codicil, and that which was considered in the court of errors in *Jackson* agt. *Waldron*. Here the vesting of an estate in fee depended upon nothing but the contingency of the death of Thomas M. Wilson without male issue, and the persons in whom it was to vest were designated and ascertained. In the Eden will, on the contrary, the person who was to take was not ascertainable until the contingency happened. In other words, it depended upon the double contingency of the death of one of the brothers without issue, and the survivorship of the other. It was upon this very point that Senator TRACY held that the interest of Medcef Eden was a naked possibility not coupled with an interest. The whole point really decided in *Jackson* agt. *Waldron* was that a devise to two, and if either dies without issue, his share to the survivor, gave to each only a bare possibility in the lands devised to the other during his life, and that such a right was not interest, and was not assignable or releaseable. The cases and text writers cited both by the CHANCELLOR and Senator TRACY, clearly make the distinction between such a right and a devise upon a like contingency to a definite and certain person. It is agreed that the latter are coupled with an interest, and it is well settled that they are devisable. This was determined in the case of *Roe* agt. *Jones*, (1 *H. Bl.*, 30; *S. C.*, *in error in K. B.*, 3 *T. R.*, 88.) It cannot be doubted that the right or interest of Elizabeth Park in these lands was devisable. We have held that it was releasable, and passed to Thomas M. Wilson by the release proved in this case before he made the mortgage in question. And it will be seen that as it was a possibility coupled with an interest as being created by a devise to a designated person, and upon a single contingency, not remote or dependant upon the volition of another; the estate of Mrs. Park was a different one from that of Medcef Eden, and her

release was valid under the distinction by which his was declared void.

But the question now is whether this contingent interest, or possibility coupled with an interest, could be bound or charged by a mortgage—that is, substantially, whether it was assignable—and this is a question not decided in any of the cases to which I have referred.

Senator TRACY asserts it to be the doctrine of the older cases, that a contingent interest, though devisable is not assignable, and that the more recent decisions do not trench upon that rule. The remark was not necessary in the decision of the cause, and I think with deference was hardly correct. The opinion or impression may no doubt be traced in a great degree to *Lampet's case*, (10 *Rep.* 46.) Lord COKE does say it was resolved in that case that an executory interest is a term which was devised for life to one, and then for the residue to another, was not assignable to a stranger.. But what was adjudged in the case was that this interest in the latter was releasable to the tenant for life. Executory devises had then but just been introduced into the law, and they were regarded by the elder lawyers with a strictness which has since been relaxed. Without adverting to the whole series of decisions, it will be sufficient to cite a few of the more recent. In the case of *Jones* agt. *Roe*, (3 *T. R.*, 88, 93,) Lord KENYON seems to have considered that it had come to be settled by degrees that such interests were descendible, releasable, and assignable, and that the only question remaining was if they were devisable, which he expresses a determination to put at rest. So the other judges gave their opinion seriatim—thought that the case turned upon the statute of wills, and upon the question whether the language of the statute was broad enough to include the interest or estate in question. I think the modern authorities and the text-books will sustain the proposition, that devisable and assignable are convertible terms in reference to contingent interests, and I see no

reason why they should not. In order to show that such contingent rights were devisable, it was only necessary to establish that they were interests, and not merely possibilities. But when this was established it certainly proved that the devisee had something in the land, and if he had an actual definite, although contingent interest, he could convey by the same rule by which he could devise it, unless he was forbidden to do so by the statutes of champerty. I have no doubt that such a case is entirely excluded from the purview of all, even the older and more stringent statutes of champerty. Waiving the question whether a mortgage is forbidden by these statutes, the sale of a contingent interest to arise after a determinable fee is not such a sale of a pretended right or title as the statutes of champerty aim to prevent; such pretended titles are where one person claims land of which another is in possession, holding adversely. It is plain that there was no such adverse possession here. I perceive no difference between vested and contingent remainders, or executory devises, in respect to champerty. In either case there is no possession by the remainderman or executory devisee, and in neither is there any possession adverse to him. In *Grant* agt. *Townsend*, (2 *Hill*, 554,) it was held that a remainderman could convey while the tenant for life was in possession. That was a vested remainder, but the principle would have been the same if it had been contingent.

I am of the opinion that Mrs. Park could have made a valid mortgage upon her interest, and that her assignee, Thomas M. Wilson, was equally competent. It follows that the mortgage which was made by the latter was a lien, not only on his own estate under the codicil in all the lands described which determined at his death, but also upon the fee in one-third of those lands which his children took as heirs to their father, through the release of Mrs. Park. This being so, it seems to me that there is no occasion or opportunity to invoke the law of estoppel against the plain-

tiff as assignor of this mortgage. The doctrine upon which his liability for the mortgage was made out in the court below, rested upon his having assigned as valid an instrument which had become wholly invalid and ineffectual, by the death of the mortgagor, and which by its terms, covered land of which the assignor had become the owner. But that was not the fact; James Wilson still held this mortgage against the original share or estate of Elizabeth Park. It was a valid lien upon the fee to that extent, and I see nothing by which it can be said that James Wilson has guaranteed that it was a lien upon anything more, or that he should be estopped from denying that it was not. If James Wilson had been compelled to pay this mortgage, I apprehend he could have come round, either in this action or in a proper suit, upon the heirs of Thomas M. Wilson for compensation to the extent of the value of the share of Elizabeth Park, because they took this as heirs to their father, and not as purchasers, or as heirs to Thomas Wilson, sen. But in the present aspect of the case, I think the mortgage in question should be paid out of the share devised to Elizabeth Park, and now held by the daughters of Thomas M. Wilson by virtue of her release in the land described in the mortgage. If the process of this court should prove insufficient for the purpose, the holder of the mortgage should be at liberty to apply for any proper relief against the heirs of Thomas M. Wilson, who are liable for the debt of their father, not only to the extent of the land expressly mortgaged, but the value of the interest in all the land devised which passed by the release of Elizabeth Park, and comes to them as heirs of Thomas M. Wilson.

The conclusions at which I have thus arrived, dispose of the questions which were discussed as to the equities between James Wilson and Thomas M. Wilson's children.

There was another point raised in behalf of the defendant, Mary L. Wilson, and others, that they should be paid the expenditures made by their father in permanent improve-

ments. It is sufficient to say that I do not find in the papers any evidence of these improvements, and we are not called upon to lay down any rule with respect to them.

My opinion, therefore, is, that there should be a modification in relation to the mortgage of Thomas M. Wilson in conformity with this opinion, and that, in other respects, the judgment should be affirmed. But my brethren do not concur in this view of the effect of the assignment by James Wilson. They consider him bound to make the mortgage good out of his own share of this property, in consequence of his assignment, upon a similar principle to that which was acted upon by the referee, although applied to a different state of facts. In their view of the case, James Wilson, having assigned, without qualification, a mortgage which described the premises generally, or the estate of the mortgagee as if he owned the whole, is not at liberty to assert that he, the assignor, is the owner of a share of the lands not subject to the mortgage; I am not able, as I have said, to concur in this view of this part of the case, or in consequences which are deduced from it. Upon these other points presented by the case, the court are unanimous, and it being the opinion of a majority of the court that this portion of the judgment is also correct, the whole judgment is affirmed.

The costs of all the parties on appeal will be paid out of the fund.