Chueoh, Ch. J.
This action was brought to procure a construction of the last will and testament of Roxana Childs, of Utica.
The objection that the surrogate had no jurisdiction to-admit the will to probate, because the service of the citation and proof of the same upon two of the defendants was made by one of the executors, and a legatee under the will, cannot be sustained for two reasons: 1. There is no statute or rule of law against the service of such papers by a party, and the practice, it is believed, has been universal in favor of it; and since the Code, as all parties may be sworn as witnesses in the proceedings, their legal right to make preliminary affidavits of service of papers is strengthened. 2. The probate of the will by the surrogate is conclusive, unless revérsed on appeal or revoked by himself. It cannot be attacked collaterally for such an irregularity. (2 Seld., 190; Redfield on Wills, p. 47, part 5.)
Several questions are presented involving the validity of certain bequests, and the effect of the codicils upon the will, which will be noticed in their order. In the first place, it is proper to observe that the bequests are all of money; and the whole property is to be deemed converted into personalty at the death of the testatrix, by virtue of the direction to the *457 executors contained, in the will to sell the real estate. (23 N. Y., 69; 43 id., 424.) The case is, therefore, disembarrassed from any questions which might arise respecting devises of real estate.
The bequest of $25,000 to the Utica Orphan Asylum is claimed to be invalid, upon the ground that it creates a perpetuity in violation of the statute prohibiting the suspension of the absolute ownership of personal property beyond two lives in being. The Utica Orphan Asylum is a corporation created by the legislature, to be “ continued in force until the same shall be repealed by the legislature.” The act declares that “the sole object of said society shall be the support and education of orphan children. * * * The said corporation may, for the purposes of the society, take by gift, grant, devise, bequest or purchase, and hold real and personal estate to an amount not exceeding one hundred and fifty thousand dollars.” The language of the bequest is, “ I give the sum of twenty-five thousand dollars to the Utica Orphan Asylum, to be perpetually invested by the trustees,” etc. and then provides that the income only shall be used for the purposes of the asylum.
The subject of charitable bequests and devises has frequently been before the court for adjudication, and the general principles applicable to them are settled. In Williams v. Williams (4 Seld., 525) a bequest, precisely similar to this, to a religious corporation was sustained; and while the decision in that ease as to another bequest, involving the existence of the English system of charitable uses in this State, has been disapproved, and is regarded as overruled, the decision sustaining the bequest to the Huntington Church has not only never been questioned, but has been expressly approved in subsequent cases in this court. (32 N. Y., 116; 34 id., 612.)
A rule which has repeatedly received the assent of this court, and has never been questioned for twenty years, should not be disturbed. It has become a rule of property which has been confided in, and, doubtless, frequently acted *458 upon. It is true that this court, in Adams v. Perry (43 N. Y., 500), dissented from one of the reasons given for its adoption by the learned judge who delivered the opinion in Williams v. Williams, but assented to the correctness of the rule itself.
A corporation created for charity, etc., may take and hold personal property, limited by the donor to any of the corporate uses of the donee; and a direction of the donor that the principal shall be kept inviolate, ■ and the income only expended, will not invalidate the gift; provided, of course, that the same is immediate and vested. The question relates to the capacity of the corporation; and the law of perpetuity has nothing to do with it. Statutes against mortmain and perpetuity have, in a general sense, a common object to restrain the locking up of property, which prevents its free transmission and use; but they are quite different in their origin, nature and character. Our statutes against perpetuities relate to expectant estates and limitations oí future contingent interests in personal estate, and future estates in lands. The mortmain policy of this State is very simple, and is contained in each charter creating a charitable corporation. The amount of property which it may take and hold in mortmain is restricted; but its ownership is absolute, and only qualified by its artificial nature. There.is nothing contingent about it; it is fixed and certain; there is nothing expectant or future about it; but its interest is immediate and vested. A contingent future interest might be limited to such a corporation, and the law of perpetuity would apply until the contingency upon which the limitation depended happened; and if that period was not dependent upon two lives in being it would be invalid; but if within that period the interest would become vested, and the law against perpetuity would cease. The property would then be in mortmain, and beyond the reach of the law of perpetuity. The right to hold and use it would then depend upon the capacity of the corporation.
The gift in this case was to the asylum. It was immediate, *459 and became at once vested. The corporation never could have any other or greater interest than it then had; and no one else had any interest, contingent or otherwise, in it. There was no expectant or future contingent interest in any one. It is said that the statute of perpetuity is violated because the direction to invest the principal takes away the jus disponendi, without which there cannot be absolute ownership. If this is the effect of the direction to invest the funds, the direction would probably be held void, while the gift would be sustained to carry out the main purpose of the testatrix, within a well recognized principle. (1 Wm. B. R., 428; 3 Burr. S. C., 1416; 1 Coll., 381; 5 Sand. R., 365.) This principle need not be invoked in this case, if the views before expressed in favor of the capacity of the corporation to take in this way are correct; and the only result would be a modification in that respect of the statute against perpetuities.
The income only of the permanent endowment of such an institution can be used with safety to its very existence. Any other course would frustrate, and, sooner or later, destroy its usefulness. Ro mortmain law, restrictive as they have sometimes been, ever prevented the donors from making their gifts in such terms as would preserve the principal from dissipation. It does not create a trust in any such sense, as that term is applied to property. The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law by the donor, does not affect its ownership or make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself. (Lewin on Trusts, 15.)
Its duties are in some respects fiduciary; but not so as to interfere with its title to the personal property thus transferred. But assuming the binding force of the direction to permanently invest the principal, which must continue for all time, the ownership is not thereby suspended for a day, nor alienability prevented. Inalienability can only exist when *460 there are bo persons in being who can convey a title. If the whole interest in this property is not in the corporation, the remaining interest is in the heirs and representatives of the testatrix; and, by a united conveyance, a perfect title may always be conveyed. Upon either view of the question, ' there exists the jus disponendi in persons in being; and, hence, there is no suspension of ownership. These views would lead us to the same conclusion as was arrived at in respect to the bequest to the Huntington Church (supra), if we did not feel bound to follow that decision as authoritative.
It is claimed that the Utica Female Academy cannot take the bequest of $10,000, or $7,000 (to which it was reduced by a codicil), on the ground that it is limited, in holding property, by law to $35,000. The finding of fact is that the property held by the academy was worth $30,000 in cash, and $35,000 on credit; and that it owed debts created in the erection of the building to $15,000. The objection to this bequest is not tenable, whether the cash or credit valuation is taken, for two reasons: 1. The bequest is in terms to pay for erecting a new building destroyed by fire, or paying any debt incurred in its erection. The debt existed and was larger than the bequest; and, when discharged, the property would not equal the limit, so that the legacy could be applied directly to the payment of the debt by direction of the testatrix. 2. The bequest would have been effectual if it had-been general. For the purpose of estimating the value of property held by an institution, its debts must be deducted,. The same principle applies as would in ascertaining what amount of property a man is worth, which is the value of his property, less his debts. This principle was recognized in the Chamberlain Will Case (43 N. Y., 447, note).
The remaining question relates to the effect of the revocation in part of a specific legacy to the Utica Female Academy; and in whole of a legacy to the Eeformed Dutch Church, upon their right to share in the residue of the estate under the seventeenth clause of the will.
*461 The legacy to the Female Academy was given to erect a hew building, or pay the debt for such erection; or, in case that should be accomplished before the death of the testatrix, then for making certain improvements on the lot, and purchasing books, apparatus, furniture, etc.
The legacy to the Eeformed Dutch Church was to be expended in the erection of a church edifice, or paying any debt incurred for that purpose; and if the whole or any part thereof was not needed for these purposes the same was to be invested, and the income used for church purposes.
Various other bequests are made to corporations and individuals.
" The residuary clause is as follows: “ Seventeenth. I give and bequeath all the rest and residue of my estate to the Several-persons, corporations and societies to whom I have hereinbefore made bequests, and who shall be living and existing and able to take the same, in proportion to the amounts given and bequeathed to them respectively.”
In a codicil dated July 11, 1867, the testatrix stated that she had paid to the Female Academy $3,000, which she intended as a payment or advancement upon the specific legacy of $10,000 given in the will; and that she therefore revoked so much of said legacy. In another codicil, bearing the same date, she recited the specific legacy to the Eeformed Church, and the purpose of the same, and then stated that, “ it now appearing probable that said purpose will soon be accomplished, and I having concluded to give at this time the sum of three thousand dollars toward the extinguishment of the debt incurred as aforesaid, do hereby revoke my said bequest of ten thousand dollars to the said Eeformed Dutch Church.”
The question is whether it was the intention of the testatrix, by these revocations, to deprive the Dutch Church of all share in the residuary estate, and to restrict the Female Academy to the proportion of the residue represented by $7,000 instead of $10,000. The primary object in construing wills is to ascertain and carry out the intention of the testator, and *462 various rules have been adopted to accomplish this objeqt. From the nature of the subject, these rules must be quite general, because no two wills can be found precisely alike in language and surrounding circumstances. It is a general rule that a codicil will not operate as a revocation beyond the clear import of its language. (1 Red. on Wills, 362, and note; 1 Jarman, 160, note 2; 8 Cow., 56.) Another rule is that an expressed intention to make an alteration in a will in one particular, negatives, by implication, an intention to alter it in any other respect. (9 Cush., 296.) It is always important to scrutinize with care the language employed not only in the particular parts, but in every part of the instrument, in order as far as practicable to ascertain the operation and intent of the mind using it. After a careful examination and considerable reflection, I have arrived at' the conclusion that the two codicils do not operate to cut off or impair the right of the Academy or the Dutch Church to share in the residue under the seventeenth clause of the will. First, as to the' Female A cademy. The two bequests are not dependent. The reference to the first, in the last, designates the legatee and the amount, but as legacies they are independent. They are for different purposes; one for particular, the other for general purposes. We are justified in inferring that the testatrix had two objects in view; one to aid in completing and furnishing the building, the other to contribute toward a fund for permanent support. The first bequest would necessarily be expended at once; the latter might, and ordinarily would be, permanently invested. By the terms of the will the Female Academy was designated as a residuary legatee for an amount made certain by mere arithmetical calculation, as effectually as if the name and amount were written out. This is confessedly the legal construction and effect of the will. Was it changed by the testatrix % I think not. She paid $3,000 upon the specific legacy in her lifetime, and revoked so much of it in language carefully confined to that alone. If she had intended to affect the other bequest, we are to presume that she would have said so. Her will and codicils bear evidence of particularity *463 of expression as to every testamentary arrangement, and, within the rule referred to, the alteration of one bequest negatives an intent to alter the other. Suppose she had paid the whole $10,000 while she lived. Would it tend to show an intent that the other should not take effect? So far from it, it would evince a continued testamentary friendship. The act of payment and revocation are one, and must be construed together; the latter was made to perpetuate evidence of the former. The reasons for revocation apply only to the specific legacies, showing that the testatrix regarded them independent. The right of the Dutch Church to the residuary legacy is substantially the same as that of the Academy, and ftir the same reasons.
It is alleged that the will and codicils must be construed together; that they speak only from the death of the testatrix, and that, therefore, the whole will is to be construed for all purposes as though the bequest to the Dutch Church was not in the will at all, and that to the Academy was $7,000 at the time the will was made. This proposition, as a whole, cannot be sustained. It would substitute an arbitrary rule of law in conflict with the leading canon for construing wills, to ascertain, from all the testator has said, what he intended. It is a general, but not a universal rule, that a will speaks from the death of the testator. Ellsworth, J., laid down the rule correctly, when he said: “ A will speaks from the death of the testator and not from its date, unless its language, by fair construction, indicates a contrary intention.” (21 Conn., 550.) Again, the same judge said: “ Whenever a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death.” (21 Conn., 616.) This - rule, which is too obviously correct to require argument, is applicable both to property devised or bequeathed, and the devisees and legatees entitled to take. The word “ now ” has been held significant; as a bequest to the descendants now living of a person, means those living at the date of the will. (Amb., 397.) So in Cole v. Scott (16 Sim., 259) Lord Ch. Cottehham said: “It *464 appears to me just the same as if the testator had said, ‘all the freehold and leasehold estates of which I am on this 29th of April, 1843 (the date of the will), seized and entitled.’ ”
Specific gifts, whether of stock or other personal estate, have been construed to have reference to the property of the testator then in existence, and subsequently acquired articles will not pass. (Bed. on Wills, 381, and eases there cited.) A bequest of “ my black horse,” would refer to the one owned by the testator at the date of the will, and would not carry another black horse substituted for that, and which the testator happened to own at his death. So as to the objects of a testator’s bounty, the same principle applies. (Id., 382.) The general rule is, that “ if a devise or bequest is made to one sustaining a particular relation, and there is such a person in being at the date of the will, it shall be descriptive of that person.” (Id.)
There are qualifications and exceptions to the rule unnecessary to be noticed, but the rule and exceptions are established to reach the intent of the testator. The error of the appellants’ counsel is, in claiming that the revoked legacies cannot be looked at for any purpose. They are, of course, out of the will as legacies, but if they throw light upon other portions, they may be referred to for that purpose. Even a void provision is operative to indicate the intent of the testator. ( Van Kleeck v. Dutch Church, 20 Wend. R., 457.) The testatrix said in the residuary clause, “ I give,” etc., “ to the persons,' societies and corporations to whom I have hereinbefore made bequests,” etc. She referred to an existing description, and we must adopt the same description.
“ Hereinbefore” means, in this will, as it now exists. If the bequests to those persons and corporations had been void, nevertheless we could refer to them for the purpose of identity under this clause. So, if they are revoked. It is a question of identity and description. We must occupy her position, and know what she knew, and see what she saw, and then declare what she intended. The counsel for the appellants insist that she intended her residuary estate to go to *465 those only who had unpaid or unrevobed specific bequests at her death. The language is incapable of such a construction. Ho such intimation is contained either in the will or codicils, nor has any reason been suggested for such an intention. The language of the will and codicils, the circumstances developed, and the rules of law, concur in giving a contrary construction. We have been referred to no authority in this State upon this question, and I have been unable to find any; but in Colt v. Colt (32 Conn., 422) the precise question was decided in accordance with the views above expressed, and in a case not as favorable to the legatee as this. There the testator, being the owner of a large number of shares of the stock in Colt’s Fire Anns Company, bequeathed 500 shares to his brother James B. Colt, for life, and made other bequests of the same stock. In the residuary clause he bequeathed his remaining stock in said company to the several persons to whom “ I have hereinbefore given legacies of stock,” in proportion to the amount bequeathed. Afterward, he revoked the bequest of stock to his brother, as expressed, “for reasons growing out of his late unbrotherly conduct towards me.” The court held that the brother was entitled to take under the residuary clause, upon the ground that the second legacy was not dependent upon the first, so as to make them one legacy. In this case we have more elements of independence, and an absence of what existed in that case, a change of friendly relations between the testator and legatee.
The general rule, that a codicil will change a will only so far as its intent is manifest, was strongly affirmed, in 9- Cush., 291.
The case of Hayes v. Hayes (21 N. J. Eq. R., 265), relied upon by the appellants, is distinguishable from this. There the testator made bequests to various persons. In the residuary clause he stated that his specific bequests amounted to $70,000, and if his estate amounted to more or less than that sum, they were to be increased or diminished in, proportion to the amount of each, so-as to absorb his whole estate.. In a codicil he revoked, partially and entirely, bequests to> the *466 amount of $7,000, and directed that this sum should be apportioned among certain remaining legatees. The court held that the residue must be divided among the legatees in proportion to the amount to each, after the addition or deduction of the $7,000, according to the terms of the codicil. In that case, the specific and residuary legacies constituted but one legacy to each legatee. They were dependent. The $70,000 was to be increased or diminished, according as the estate should overrun or fall short, in whose hands soever it might be. When he took $5,000 from one legatee and gave it to another, its relation to the residuary clause remained unchanged. It drew from the surplus the same amount as- it would if it had remained, but it fell into other hands. If the original legatee was also allowed to use it to secure its share of the residue, it would perform a double service, contrary to the express terms of the will and codicil. It is evident that the testator intended to divide his whole estate in certain proportions, and the codicil only changed the proportion. I think it quite clear, both on principle and authority, that the codicils do not affect the residuary bequests.
Objection is made to the allowance to the executors for counsel fees. This court has decided, in two cases, that the Special Term has power to make allowances to trustees and others acting in a fiduciary capacity for all expenses necessarily incurred in the faithful performance of their duties, including counsel fees, and that the power to do this is independent of the statutory provisions relating to costs.
The opinion by Marvin, J., was delivered and adopted in Downing v. Marshall, in 1863, and again adopted in De Courval v. Ray, in 1867, and is reported in 37 N. Y., 380. The decision is .a full justification for the exercise of the power in this case. It seems that the judge may determine upon the papers and circumstances appearing on the trial. Whether the rule should be applied to cases of executors asking for a construction of a will merely, and whose accounts must be rendered to and passed upon by the surrogate, or limited to cases where -the fund is definitely and finally dis *467 posed of by the court, might, as an original question, well be doubted; but as the decision extends the rule to cover the former, we are not inclined to disturb it. The decision also holds that this court may review, on appeal, the amount of such allowances. I think this still more doubtful; but assum ing it to be correct, there is nothing in the case from which we can adjudge that the allowances were extravagant. The court evidently intended to make a full, if not a liberal allowance ; but in these days of high prices and depreciated paper currency, we should feel disinclined to interfere with the judgment of the court below as to the amount, unless it plainly appeared to be unreasonable and arbitrary. The estate was large, and the issues involved the capacity of the testator as well as grave questions of construction.
Extensive and laborious preparation was doubtless necessary both upon the facts and the law, and even if, as an original question, we should fix the amount at a somewhat smaller figure, the difference would not justify us in interfering with it upon this appeal.
The judgment must be affirmed.
All concur, excepting as follows:
G-boveb and Folgeb, JJ., dissent as to the power of the Special Term'to allow counsel fees.
Sapallo, J., dissents as to the interests of the Reformed Dutch Church in the residuary estate.
Judgment affirmed.