1829.

Gardner
v.
Heyer.

GARDNER *vs.* HEYER and others.

Where the testator lived and cohabited with M. S. in a house provided and furnished by him, and while so living with her had by her four natural children, one son called John, and three daughters, who were with his knowledge and consent baptized by his name and were educated and acknowledged by him as his children, and who were the only persons ever recognized by him as his children ; and by his will the testator gave to his son John $10,000, payable when he arrived at 24, and to each of his daughters $3,000, payable at 21 ; and directed his executors to pay to M. S. $65 quarter yearly during her life if she remained unmarried and had no more children ; and appointed his executors guardians of his children during their minority ; it was held that this was a sufficient description of the testator's natural children by M. S. as the legatees intended by him.

Wills in favor of natural children are to receive a like construction as those in favor of other persons.

As a general rule, a devise to children, without other description, means legitimate children ; and if the testator has such children, parol evidence cannot be admitted to shew that a different class of persons was intended.

It is always proper to look into circumstances dehors the will to ascertain whether there are any persons answering the description of the legatees named in the will.

If there are no such persons, then the situations of the testator's family may be proved to enable the court to ascertain the persons intended by the testator as the objects of his bounty.

THE bill in this cause was filed by the brother and heir at law of John Gardner deceased, against the surviving executor and trustee under the will of the latter, and certain persons claiming to be the general legatees named or described in the will. The complainant alleged that the will was obtained by fraud from the testator, at a time when he was wholly incompetent to make a will ; and he prayed that the will might be declared void, and be ordered to be delivered up to be cancelled ; that the trustees and executor might be directed to deliver up the possession of the real estate to the complainant, and account for the rents and profits of the same, and for the personal estate which had come to his hands. The bill also stated divers acts of mismanagement of the funds by the executors and their agent. On filing the bill an order was obtained to shew cause why an injunction should not issue agreeable to the prayer of the bill, and to restrain the survivng executor from interfering with the es-

December 1st.

tate, or from paying over any part thereof to the supposed legatees under the will, and that in the mean time a temporary injunction issue.

*W. P. Wood,* for the complainant.

*W. Kent & R. Bogardus,* for defendants.

THE CHANCELLOR. The answers and affidavits on the part of the defendants shew that neither the solicitor, nor complainant who swore to the truth of the bill, had any foundation for their belief as to the incompetency of the testator, or the fraud in obtaining the will. The injunction cannot be sustained on that ground; even if the court had the power to set aside the will as to the personal estate after it had been proved in ample form before the surrogate and after the complainant who contested it there had for a period of ten years neglected to appeal from that decision. But a new ground is now taken, which is, that if the will is valid, the legacies to the natural children of the testator are void because there is no sufficient description of the legatees who were intended by the testator. It probably would be a sufficient answer to this objection, that no foundation for relief on that ground is laid in the bill. If the allegations in this bill are true, there never was any valid will; and there is nothing in the bill to show that the complainant makes any claim, as the party beneficially interested under the will, in consequence of the insufficient description of the legatees. The whole scope of the bill as well as the relief prayed is to set aside the will as absolutely void, in consequence of the incompetency of the testator and the fraud of the defendant. But as the question as to the right of the natural children under this will has been raised and fully argued, it may be proper to look into it for the purpose of saving trouble and expense to the parties in the further proceedings which may take place.

From the facts disclosed it appears that the testator was never married ; but had for a long time lived and cohabited with M. Smith, in a dwelling house owned or provided by him and furnished at his expense ; during which time, between June, 1806, and March, 1815, she had by him five children. All

these children were, with the knowledge and consent of the testator, baptized by his name. One of them died in infancy, and the other four, a son and three daughters, were by him placed at school and acknowledged as his children, and were generally reputed as such by his friends. He died a bachelor, and these children by M. Smith are the only persons he ever acknowledged or recognized as his children. By his will he gave to his son John $10,000, to be paid to him when he arrived at the age of 24, the interest in the mean time to be applied to his maintenance and education, He also gave to each of his daughters $3000, payable at the age of 21 ; and the interest in the mean time to be applied to their education and support. He directed his executors and trustees to pay $65 to M. Smith, quarter yearly during her life, if she remained single and had no more children. He devised and bequeathed all the residue of his real and personal estate to his executors and trustees and the survivor of them in fee, in trust to pay two thirds of the income thereof to his son John, and one third to his daughters during their lives, with remainder to their issue. And he gave cross remainders to the survivors in case any of the children should die without issue. He also appointed the executors and trustees, or the survivor of them, guardians of his children during their minority ; and earnestly requested that the utmost care should be taken of their morals and education. From the facts which I have stated, it is impossible for me to doubt that the son and three daughters of M. Smith, the reputed children of the testator, were the intended objects of his bounty. And if there is not some unbending rule of law which makes it the duty of the court to punish the innocent and unoffending offspring for the sins of their parents, I do not see how these legatees can be deprived of the property which was intended to be given them by the testator. I have looked into the several cases which were referred to on the argument, and find nothing which places wills made in favor of natural children on a different footing, as to construction, from those made in favor of other persons. As a general rule, a devise to children without any other description,

means legitimate children; and if the testator has such children, parol evidence cannot be received to show that a different class of persons was intended. But in this case as in all others, it is proper to look into circumstances, dehors the will, to see whether there are any persons answering the description of the legatees in the legal sense of the term; and if it appears there are no such persons, it is then allowable to prove the situation of the testator's family, to enable the court to ascertain who were intended by the testator as the objects of his bounty. The whole law on this subject was so fully examined by the late Sir Thomas Plumer, in *Beachcroft* v. *Beachcroft*, (1 Mad, R. 430,) that it would be a waste of time to go over the same ground. The bequest in that case was "£ 5000 to each of my children; and 6000 sicca rupees to the mother of my children." There was no other description of the legatees in the will. The testator died a bachelor, leaving five natural children by an East Indian woman. It was proved, dehors the will, that he had recognized them as his children, and had sent three of them to England for an education. In that case the legacies were decreed to them.

In the case before me the facts are much stronger to shew who were intended. The testator could not have intended legitimate children which he might have by a future marriage; for one of the objects of his bounty is described as his son John, and the others as his daughters. It would require too great a stretch of credulity to suppose the testator not only contemplated a marriage and the birth of issue, but that he also anticipated he should have but one son, who would be named John, and that all the other children of the marriage would be daughters; that he should die before they arrived of age, and that they would all need testamentary guardians. To give such a construction to this will would indeed be reversing the rule that the court should endeavor to ascertain and carry into effect the intention of the testator. It would be following a technical principle for no other purpose but to defeat the manifest intent of the testator.

There is no doubt as to the legal and equitable rights of the children of Mr. Smith under this will. The rule to shew cause why a general injunction should not issue, must be discharged with costs; and the temporary injunction must be dissolved.