JOHN GELSTON AND THOMAS DOUGHERTY, AS TRUS-
TEES AND EXECUTORS OF HENRY SHIELDS, DECEASED,
RESPONDENTS, v. WILLIAM H. SHIELDS AND OTHERS,
APPELLANTS.

*Will — when "children" means illegitimate children— Guardian of the person
entitled to receive the income of the estate — When tenant for life bound to pay
interest on mortgage — When the exercise of a discretionary power of sale, not
compelled.*

Henry Shields died in March, 1874, leaving a will which provided, among other
things, as follows: "I give to my beloved wife Catharine Shields, the dwelling-
house now belonging to me.   *   *   *   I direct that my executors shall set
apart   *   *   *   several sums of $5,000 each, according to the number of my
children surviving me, which sums or property of equal value shall be in trust
by my executors, and set apart, one for the benefit of each one of my children
surviving me;   *   *   *   as to all the rest, residue and remainder of my estate,
*   *   *   I give and devise the same in equal shares to my children who shall
survive me."   *   *   *   I appoint my wife the guardian of the persons of my
infant children during their respective minorities."

Henry Shields, the testator, was married November 20, 1848, to defendant,
Catharine Shields, and had by her eight children, four sons and four daughters,
all of whom were living at testator's death, and five of whom were then minors.

After testator's death, an action was commenced by one Jane Shields, who
claimed to be the widow of the testator, to recover her dower, and a judgment
was recovered by her therein, Catharine Shields and her children being parties
to that action. It appeared that the testator married the said Jane in 1833, and
lived and cohabited with her until 1848   Two children, a son and a daughter,
were born of her, both of whom were living at his death.   Since his marriage
with Catharine Shields, he had lived with her as his wife.

*Held,* that by the word "children" in testator's will, he meant his illegitimate
children by Catharine Shields, and not his legitimate children by Jane.

That under the provision appointing his wife the guardian of the persons of
his infant children, Catharine Shields was appointed such guardian, and that,
as such, she was entitled to receive the income of their estates.

*Quære,* as to whether she should be compelled to give security.

The testator gave to his wife a house, during her widowhood, and directed that
if it should be sold by his executors, with her consent in writing, the proceeds
should be invested and the interest paid to her during her widowhood; and if
testator should dispose of it before his death, she was to have the income of
a principal equal to the amount for which it was disposed of.   Before his death
testator executed a mortgage on the house to secure a debt of his oldest son.

*Held,* that the wife was bound to keep down the interest on the mortgage during
her life, and had no claim against the estate for the amount so paid.

In an action brought for the construction of a will, it is not proper to direct the
executors to make a sale under a discretionary power of sale vested in them
by the will.

CROSS-APPEALS from a judgment entered upon the trial of this action by the court without a jury. The action was brought to obtain a construction of the will of Henry Shields.

Henry Shields, the testator, died in March, 1874, leaving a will, which provided, among other things, as follows, viz.: "I give my beloved wife, Catharine Shields, the dwelling-house now belonging to me, known as No. 106 (one hundred and six) Second avenue, in the city of New York, that she now occupies; to have and to hold the same unto my said wife during her widowhood, and if said dwelling-house and lot on which it stands should be sold by my executors, with her consent in writing, the proceeds thereof shall be held and invested by my executors, and the income thereof applied to her use during her widowhood, and upon her death or remarriage, I devise the same in equal share to my then surviving children, and the then surviving issue of any who shall have died in fee simple as tenants in common, the issue of any deceased child to take the share its parent would have taken if surviving. If I shall dispose of said dwelling-house before my death, then, in lieu thereof, I give to my wife the income of a principal sum equal to that at which I shall have so disposed of the same, to be enjoyed during her widowhood, the principal to be held and invested by my executors for this purpose. I give and devise to my executors in trust the sum of $30,000, * * * to be held and invested by them, and the income * * * thereof shall be applied by them to the use of my dear wife during her widowhood. The provisions contained in this will for the benefit of my wife are in lieu of all dower or thirds in my real estate. I give all my household furniture * * * to my dear wife to be hers forever. * * * I direct that my executors shall set apart, out of the residue of my estate, real or personal or both, excluding that hereinbefore mentioned, several sums of five thousand (5,000) dollars, or property in their judgment of equivalent value, according to the number of my children surviving me, which sums, or property of equal value, shall be in trust by my executors, and set apart, one for the benefit of each one of my children surviving me in the manner following: * * * And in the event that any one of my sons shall die before attaining the age of twenty-five years, and without issue surviving

him, or if any daughter shall die without issue surviving her, the said principal shall fall into my residuary estate and be disposed of as such. As to all the rest, residue, and remainder of my estate, both real and personal, not hereinbefore well and sufficiently disposed of, I give and devise the same in equal shares to my children who shall survive me, to be their's forever; the issue of any child who shall die before me to take the same share its parent would have taken if surviving me. I appoint my said wife the guardian of the persons of my infant children during their respective minorities. * * * I authorize my executrix and executors, or those who shall act for the time being, to sell all, or any part of my real estate, either at public or private sale, for such prices as they shall think fit, and to give good and sufficient deeds of conveyance therefor in fee simple, and until such sale they shall receive the rents and profits thereof for the purposes of this will. They are authorized to sell and convey all, or any part of said real estate, and they are also authorized to keep the building in good order and repair, and insured against loss or damage by fire, and to use moneys received from insurance companies for loss for the purpose of rebuilding, if, in their judgment, beneficial to my estate; also to compound and compromise all claims in favor of or against my estate."

The action was brought to obtain a judicial construction of the will. The justice before whom the action was tried found, among other things, that said Henry Shields was married to the defendant, Catharine Shields, on the 20th day of November, 1848, and that he had by her eight children, four sons and four daughters, all of whom were still living, and seven of whom were at his death infants; that said Catharine Shields, the widow of Henry Shields, deceased, accepted the provisions of the will in her behalf; that since the testator's death a claim was made by one Jane Shields, or Jane Valentine, that she was the widow of said Henry Shields; that a demand for dower was made by her in the real estate of the testator, and an action was commenced by her for the recovery of such dower against all the parties to this action, and a judgment was obtained by her in this court on the 26th day of May, 1876, for a sale of testator's real estate, and for the payment to

her of a gross sum of money in lieu of her dower in said real estate; that an order was entered in said action for the compromise and settlement of said judgment, and the same was afterwards settled, and said judgment satisfied of record; that the defendants, Catharine J. Bonner and William B. Shields, are children of the said Jane; that said Catharine was born in the year 1840, and said William B. was born in the year 1848, and that three other children of Jane died without issue and intestate prior to the year 1863; that actions were commenced by said Catharine J. Bonner and said William B. Shields, in the City Court of Brooklyn, against said executors and executrix, to compel a recognition of their claims to be children of Henry Shields, deceased, and beneficiaries under said will, which actions are still pending; that the defendants, Henry L. Bonner, Paul Bonner, Mary E. Bonner and Jennie Bonner, are infant children of said Catharine J. Bonner; that at the time of the execution of said will the dwelling-house and lot No. 108 Second avenue, in the city of New York, in said will mentioned, was clear of mortgage; that the testator subsequently borrowed from the Bank for Savings of the City of New York, the sum of $10,000, and executed his bond, together with a mortgage, covering the said premises, 108 Second avenue, bearing date May 15, 1872, and payable one year thereafter, which mortgage was duly recorded and is still due and unpaid. The justice further found that the testator did not in his will refer to, or intend to provide for, the said William B. Shields or the defendant Catharine J. Bonner or her children, and that the testator's wife and children, mentioned and referred to in said will, are the said Catharine Shields, his widow, and the eight children above named, the issue of his marriage with said Catharine Shields; and, as conclusions of law, that the defendants, William B. Shields and Catharine J. Bonner, and the children of said Catharine J. Bonner, have not, nor has either of them any rights or interests in the real or personal property of the testator, the said Henry Shields, deceased; that the defendant, Catharine Shields, is the person referred to in said will as the wife of the testator; that during her tenancy for life or widowhood on the premises, 108 Second avenue aforesaid, she must keep down and pay the interest on the mortgage thereon of $10,000 as it becomes due, and the

annual taxes and water-rates on said premises ; that she must keep said premises in repair and free from waste, and pay the annual premiums for insurance thereof against fire; that the widow, Catharine Shields, is not entitled, as testamentary guardian of the persons of the minor children of said Henry Shields, to receive the rents, income or property of such children. That in order to pay the taxes in arrears, the unpaid claims and the costs and expenses of this action, a sufficient portion of the testator's real estate should be sold and conveyed by the executors and executrix.

*J. J. Perry*, for the respondents Catharine J. Bonner, William B. Shields, and guardian *ad litem* for infant children of Catharine J. Bonner. In all wills and devises the words "heirs" and "children" mean legitimate heirs and children only, and before a court will construe a will to include, under the general term, "children," illegitimate children, the intention of the. testator must be clear, unequivocal and positive, and the names of each must be specifically stated. (*Gardner* v. *Hyer*, 2 Paige, 11; *Beachcroft* v. *Beachcroft*, 1 Madd. Chy. [English]; *Parrett* v. *Rodman*, 37 N. Y., 58; *Collins* v. *Hoxie*, 9 Paige, 88; *Cartwright* v. *Vaudry*, 5 Vesey, 530.)

*Homer A. Nelson*, for the respondent Catharine Shields, widow of Henry Shields, and her children. The intention of the testator, if not inconsistent with the rules of law, must govern, and this intention is to be ascertained from the whole will. (*Bradhurst* v. *Bradhurst*, 1 Paige, 343; *Covenhoven* v. *Shuler*, 2 id., 130; *Rathbone* v. *Dyckman*, 3 id., 26; *Howe* v. *Van Schaick*, 3 Barb. Chy., 506; *Roome* v. *Phillips*, 24 N. Y., 463; 4 Hun [11 Sup. Ct. Rep.], 363; *Van Nostrand* v. *Moore*, 52 N. Y., 21; *St. Luke's Home* v. *Association for Indigent Females*, 52 id., 191; *Lefever* v. *Lefever*, 59 id., 440; *Holmes* v. *Mead*, 52 id., 322; *Gardiner* v. *Heyer*, 2 Paige, 11; 1 Jar. on Wills, 330; 1 Redf. on Wills, 691, § 42, pl. 40; id., 695, pl. 49.) Mrs. Catharine Shields, the testamentary guardian of the infant defendants Shields, is appointed such guardian by article eighth of the will of testator, and as such guardian would be entitled to have the custody and management of their personal property and the profit of their real estate

by statute. (3 R. S. [5th ed.], 243; R. S., part II, tit. 3, ch. 8; *People ex rel. Brooklyn Industrial School* v. *Kearney*, 31 Barb., 430; 3 R. S. [5th ed.], 2, §§ 5, 6.)

*George C. Blanke*, for the respondents. It is the duty of Mrs. Catharine Shields, as tenant for life or widowhood of the premises in Second avenue, to keep down and pay during her tenancy the interest on the $10,000 mortgage on these premises, and also the taxes, water-rates, repairs and insurance premiums. (*The Estate of Miller*, 1 Tucker's Sur. Rep., 346; *Cairns* v. *Chabert*, 3 Edw. Chy., 312; 2 Brad. Sur. Rep., 77–311; 4 Kent's Com., 75; 1 Story's Eq. Juris., § 488; *Mosely* v. *Marshall*, 20 N. Y., 200.) Mrs. Catharine Shields, as testamentary guardian under this will, has no right to receive the rents and income of her minor children. (*Accounting of Ira Sackett's Estate*, 1 Tucker's Sur. Rep., 84; *Accounting Estate of Frederick A. Biolly*, 1 id., 422.)

GILBERT, J.:

It seems to me to be a stretch of the power of the court to direct an exercise, partial or otherwise, of the power of sale contained in the will. This suit was brought merely for the purpose of obtaining a judicial construction of that instrument. The power of sale is discretionary and is one in trust. The execution of such a power ought not to be coerced, except by a judgment rendered in a suit brought for that purpose, and upon proof showing the necessity therefor. If the executrix improperly refuses to co-operate with her co-executors in effecting a sale, she may be compelled to do so, or be removed by appropriate proceedings. I am also of opinion that the executrix is testamentary guardian of her infant children, and as such is entitled to the custody of their persons, and to the custody and management of their personal estate, and to receive the rents and profits of their real estate. Testamentary guardianship did not exist at common law, but rests upon statutes. (12 Car. 2, ch. 24; 2 R. S., 150, §§ 1, 2, 3; Schoul Dom. Rel., 393.) The power of testamentary disposition given, is to dispose of the custody and tuition of infants. The so-called wife of the testator was appointed guardian of the persons only of her children. But such guardianship

obviously involves the custody and tuition of them. I think, therefore, that her appointment was in substantial conformity with the statute. But, if otherwise, the third section of the Revised Statutes cited confers upon any person, to whom the custody only of a minor has been disposed of, the powers of a testamentary guardian. Whether security should be required of the guardian, is a question which is not before us.

The provisions of the will in favor of the testator's so-called wife have not been assailed. By some of those provisions the testator gave to her his dwelling-house, and the lot on which it stands, during her widowhood, and directed that if the same should be sold by his executors, with her consent in writing, the proceeds thereof should be held and invested, and the income applied to her use. The will further provided, that if the testator disposed of the said house and lot before his death, then in lieu thereof he gave to her the income of a principal sum, to be held and invested by his executors, equal to that at which he so disposed of said property. Intermediate the making of the will and the death of the testator, he mortgaged that property for the accommodation of his eldest son, and that mortgage is still outstanding. The gifts for the benefit of his so-called wife were expressly made in lieu of her dower, and she having accepted the same, the question arises whether she is bound to keep down the taxes and the interest which shall accrue upon the mortgage. I think she is. Having elected to accept the provisions of the will, she must take them according to their legal effect. The court cannot alter those provisions, or either of them, in order to obviate any change of circumstances which has occurred since the will was made. The mortgaging of the house and lot, although it was a disposition of that property in one sense, yet it was not such an one as calls for the exercise of the alternative provided by the will. The widow must therefore keep down the taxes on that property, and the interest on the mortgage thereon, and the will makes no provision for reimbursing her in any form. With respect to the terms of the judgment in other particulars, there has been no contest, save on the subject of the gifts for the benefit of children. The testator, by his will, in the clearest language, designates the defendant, Catharine Shields, as his wife; he

creates trusts for the benefit of his surviving children; for "each" of his sons, and "each" of his daughters, separately, with gifts over to their children, and he appoints his so-called wife guardian of the persons of his infant children during their respective minorities. It appears that after the death of the testator, a woman, whose maiden name was Jane Valentine, brought an action in this court to recover her dower in the testator's lands, on the ground that she was his widow; that all the parties to this action were parties defendant in that action, and that upon a trial of special issues, it was found and adjudged that the testator and said Jane were married in the year 1833; that said Jane was his widow, and that she was entitled to recover her dower in the lands of the testator. Upon the trial of this action it was proved that, at the date of the testator's will, there were living a daughter and a son, who were the offspring of the testator and said Jane, and who are still living; that the daughter was born in the year 1840, and that the son was born in the year 1848. It was also proved that on November 20th, 1848, the testator was formally married, by a priest of the Roman Catholic Church, to the said Catharine; that he had by her four sons and four daughters, all of whom, except one daughter, were born before he made his will, and all of whom are living; that from the time of the marriage between the testator and said Catharine, until his death, they lived together openly, and notoriously, as husband and wife, and together with their children, as they were successively born, formed one household; that said Jane was only fourteen years old in 1833, and that all connection, between her and the testator, ceased in 1848, after which she never saw him. The evidence tended very strongly to show that the testator never recognized said Jane as his wife, or their offspring as his lawful children, and that the kind of recognition which he did bestow upon them was such as indicated that his connection with said Jane was unlawful, and that he did not regard said children as legitimate.

Upon these and some minor facts the justice, at Special Term, found that the children referred to in the will were the issue of the testator's marriage with said Catharine. The justice did not find that either marriage was lawful or unlawful, or that the issue of either marriage were legitimate or illegitimate. He was

requested to find that the children of the testator and said Jane were the lawful issue of their said marriage, which request was refused, and the defendant excepted. Upon that question of fact it was not the duty of the justice to comply with the request, unless the judgment in favor of Jane, before referred to, operated as an estoppel against the children of Catharine. Treating the judgment as evidence merely, to be considered with the other evidence in the case, the request was properly refused. For it is not the right of a party to have a fact found, unless it has been proved by uncontroverted testimony. The judgment recovered by Jane was one *in personam*, and not one *in rem*. The question of the legitimacy of children was not involved in the case. That point, therefore, is still open to litigation. Upon the trial of this case, no direct evidence of either the non-existence or of the invalidity of the alleged marriage with Jane was given; but evidence was given, *aliunde* the judgment in the suit for dower, tending to show that the testator and said Jane were in fact married in the year 1833, and that the defendants Catharine J. Bonner and William B. Shields are the offspring of that marriage, and the only offspring thereof who were living when the testator made his will. Assuming, therefore, the existence of such marriage, and its continuance until the death of the testator, nevertheless the question presented, relative to the gifts to children, is one respecting the intention of the testator only. That intention is to be collected from all the provisions of the will, and the circumstances surrounding the testator at the time the will was made, and when ascertained must control the interpretation thereof.

That rule is too familiar to require a citation of authorities to sustain it. *Prima facie* the word " children " means legitimate children. But when it appears from the will itself, by express designation, or by necessary implication, that the intended objects of the testator's bounty are illegitimate children, they will take under the description of " children." " Necessary implication," said Lord ELDON, in *Wilkinson* v. *Adams* (1 V. & B., 422–466), " means not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator cannot be supposed." Such manifestation of the testator's intention is as effectual as if he had written the word " illegiti-

mate " before the word " children." In *Wilkinson* v. *Adams*, just cited (1 V. & B., 422), the testator at the time he made his will had a wife living, but no children by her. Another woman, Ann Lewis, was living with him, by whom he had three natural children, all of whom were born before his will was made. All these children, at the time when the testator made his will, had acquired the character and reputation of being his natural children by Ann Lewis. By his will he made a devise in these words, " to the children which I may have by the aforesaid Ann Lewis, and living at my decease," etc. It was contended that the testator contemplated the death of his wife before his own death, a marriage with Ann Lewis, and his having children by her. But the judges, in an opinion sent to the lord chancellor, upheld the devise, upon the ground that from the material parts of the will it appeared that the testator meant the devise to operate in favor of his illegitimate children, born and to be born by Ann Lewis, and they declared that the case of *Cartwright* v. *Vawdry* (5 Ves., 530), relied on by Mr. Perry in this case, could not be considered as a decision. Lord ELDON, after commenting on the case of *Cartwright* v. *Vawdry* and other cases, and explaining the former, decided that the illegitimate children were, upon the will itself, the whole taken together, entitled to take as devisees. In *Beachcroft* v. *Beachroft* (1 Madd., 430), Sir THOMAS PLUMER said: " I know of no rule of law which prevents illegitimate children claiming under a class or description as well as any other strangers. Such children are not prohibited from taking, as by the civil law, and I see no reason to prevent them taking under a general description."

The rule thus stated has been applied in numerous cases, both prior and subsequent. (See Pow. Dev. pt. 2, chap. 17; Jar. on Wills, chap. 31.) Mr. Jarman states (vol. 2, p. 155), as a conclusion from all the cases, that illegitimate children " are not objects of a gift to children, or issue of any other degree, unless a distinct intention to that effect be manifest upon the face of the will, and if by possibility legitimate children could have taken as a class under such gift, illegitimate children cannot." The English courts have usually adhered, with a far greater degree of strictness and pertinacity than would in general be deemed allowable

by the courts of this country, to any rule for the construction of wills, when once established. In some instances they have done so when an application of the rule required them to violate the manifest intention of the testator. A notable instance of this occurred in the case of *Edmunds* v. *Fessey* (7 Jur. [N. S.], 282). In that case there was a bequest "to each of the sons and daughters of A. B. living at my death." At the death of the testator there were living three sons and one daughter of A. B. One of the sons and the daughter were illegitimate. Sir JOHN ROMILLY, notwithstanding he was of opinion that it was evident the testator intended to include all the children, held that the illegitimate daughter took the legacy, but that the illegitimate son was excluded. See the remarks of Mr. J. Redfield on this subject. (2 Redf. on Wills, 340 *et seq.;* 1 id,, 656 *et seq.*) In Williams on Executors, etc. (7th ed., vol. 2, p. 1099), it is stated that the rule of Mr. Jarman is not an invariable one, and that statement is confirmed by recent cases in England.

In *Holt* v. *Sindrey* (L. R., 7 Eq. Ca., 170), the testator made a bequest to his daughter Mary, the wife of John Lattimer, for life, and after her death to her children. Mary married one Flenley, but separated from him on the day of the marriage, and they never met again. Within a year after they separated, and more than thirty years before the death of Flenley, Mary married John D. Lattimer, and had issue by him seven children. Sir JOHN STUART, V. C., held that the illegitimate children of Mary took under the will, because they were clearly described therein as the objects of the gift. He said, "the fact that, from an unknown circumstance, the children begotten of Mary Lattimer were, although the testator did not know it, illegitimate, seems to me to have nothing to do with the question whether they are or are not sufficiently described in the will." In *Lepine* v. *Bean* (L. R., 10 Eq., 160), the testator, William Bean, gave his real and personal estate to trustees in trust, to pay the income to his "dear wife, Margaret Bean," for life, provided she should so long continue his widow and unmarried, and after her death or second marriage, upon trust to divide the estate between all his children in equal shares. The testator was not married to Margaret Bean, but he had a wife named Elizabeth Bean living. She was seventy

years old, and the testator had always lived apart from her, and he had had no children by her. Margaret Bean had always lived with the testator, and was recognized as his wife, and he had four children by her, two of whom had died before the date of the will — one was then alive, and the fourth was born afterwards. These children were all baptized in the name of the testator, and were always known by his name. There the Master of the Rolls, Sir JOHN ROMILLY, held that after the death of Margaret Bean, if she continued unmarried, the estate would devolve on the surviving child of the testator and said Margaret. He said, "he calls her (Margaret) his wife all through the will, and he also calls the children 'my children.' I think it is pretty clear that by these words he meant his children by the woman he called his wife." In *Crook* v. *Hill* (L. R., 3 Ch. Div., 773; S. C. L. R., 6 Ch., 311), there was a gift to the testator's daughter, Mary, with power of appointment to her children. She had had two children by one Crook. Mary was not the wife of Crook, although she had gone through the ceremony of marriage with him, nor could she become his wife, because Crook was her deceased sister's husband. It was held that, as by the will the testator showed that he intended to recognize the children as legitimate, they were entitled to take under the gift to children, notwithstanding they were illegitimate. That decision was affirmed in the House of Lords (L. R., 6 H. L., Ca., 265). The doctrine thus laid down is fully recognized and approved in *Dorin* v. *Dorin* (L. R., 17 Eq., 463; S. C. L. R., 7 H. L. Ca., 568; *Laker* v. *Hordern*, L. R., 1 Ch. Div., 644; *Barlow* v. *Orde*, L. R., 3 Priv. Coun. App., 164–189.)

Our own reports do not abound with cases analagous to that which is before the court. The rule as stated by Ch. WALWORTH, derived from the English cases then (1841) published is, that "when there are legitimate children in existence at the time of making the will, so as to satisfy the words of the devise or bequest in their primary sense, an illegitimate child cannot take under a general devise or bequest to children, as a class, *unless there is something appearing upon the face of the will to show that the testator intended to include others besides legitimate children.* (*Collins* v. *Hoxie*, 9 Paige, 87, 88.) A different rule was not applied in *Gardner* v. *Heyer* (2 Paige, 11), for in that case the testator

was never married, and a devise to his illegitimate children was held to be good, and the chancellor cited with approval the case of *Beachcroft* v. *Beachcroft* (*supra*). In *Cromer* v. *Pinckney* (3 Barb. Ch., 466), the chancellor reiterated the rule in *Collins* v. *Hoxie*, and enlarged it by giving effect to extrinsic circumstances existing when the will was made in determining the construction of the will.

The rule, thus established, simply carries out the intention of the testator, as manifested by the language which he used, in conjunction with the circumstances which surrounded him at that time, instead of defeating that intention by attributing to words a technical meaning different from the sense in which the testator used them.

It is very true that in the cases cited there were no legitimate children to whom the description of the will could apply, and that if the gifts to illegitimate children had not been upheld, the gifts would have failed altogether. In some of the cases, also, the description of children might have been applied to legitimate children if there had been any, without violating the intention of the testator, and, in such an event, no doubt would have been so applied. But when the intention of the testator to give to illegitimate children is clear, the fact that legitimate children are in existence, who might possibly take under the description of the will, cannot defeat that intention. In all such cases the language used must be interpreted in its ordinary sense, unless, as stated by Ch. WALWORTH, in the cases above mentioned, there be something upon the will, in conjunction with the circumstances surrounding the testator at the time it was made, to show that another sense was intended. The rule is a reasonable one, and is also a logical consequence of the power of testamentary disposition. A man has a right, qualified only by the restraints of positive law, to give his property to whomsoever he pleases. If he has both legitimate and illegitimate children, he may make either or both the objects of his bounty. Under the description of " children," alone, only legitimate children will take. But the will by itself, or in connection with such extraneous evidence as the law permits to be given, may show that the objects intended by the testator include both classes, or one class, to the exclusion

of the other.   The intention of the testator is the pole star of construction, and must in every case determine the effect to be given to the will.   (1 R. S., 748, § 2.)

In the case before us I think that the will furnishes very cogent evidence that the persons whom the testator intended by the description of " children " were those who were born of the woman whom he called his wife.   In the case of *Hill* v. *Crook* (L. R., 6 H. L. Cas., 285), before cited, Lord Chancellor CAIRNES said : " It appears to me that the terms ' husband ' and ' wife,' ' father ' and ' mother,' and ' children ' are all correlative terms.   If a father knows that his daughter has children, by a connection which he calls a ' marriage ' with a man whom he calls her ' husband,' terming the daughter the ' wife ' of that husband, I am at a loss to understand the meaning of language, if you are not to impute to that same person, when he speaks of the ' children ' of his daughter, this meaning, that as he has termed his daughter, and the man with whom she was living, ' wife ' and ' husband,' so also he means to term the offspring, born of that so-called marriage, the children, according to that nomenclature.   That is all that your Lordships have to find.   If you find that that is the nomenclature used by the testator, taking his will as the dictionary from which you are to find the meaning of the term he has used, that is all which the law, as I understand the cases, requires."   In *Barlow* v. *Orde* (*supra*), Lord Chancellor WESTBURY held " that the word ' children ' must be taken in that sense that it was used by the testator — that is to say, its extent of meaning in the vocabulary and mind of the testator must be determined in the will itself." These remarks applied to those cases, and to this case are sensible and just.   See, also, prevailing opinion in *Cutter* v. *Doughty* (7 Hill, 305), reversing *S. C.* (23 Wend., 513).   Whether the testator was lawfully married to Catharine Lalor or not, there can be no question that he thought she was his lawful wife, and that he did not regard his connection with Jane Valentine, whatever it was, as one which created a marriage between them.   That being so, it follows as a corollary that the children whom he intended to provide for were the children who were born of the woman whom he called his " wife."   If no dispute existed respecting the validity of the testator's marriage with said Catharine, those children would

have taken by force of the meaning which the law gives to the term "children." Using the will as the testator's glossary, or dictionary, to ascertain the meaning of that term, the result must be the same. In other words, the children designated in the will are those born of the testator's wife, and for the purpose of the construction of his will she must be treated as his "wife," whom the testator called his wife. Additional evidence that such was the intention of the testator also arises from the fact that all the provisions for children are in terms for sons and daughters, in the plural number, which, of course, are not strictly applicable to the one son and one daughter of said Jane; from the appointment of his so-called wife Catharine guardian of the persons of his infant children, whereas only one of his children by said Jane was an infant, and from the extreme improbability that the testator intended to make his so-called wife guardian of the person of the infant son of said Jane. Having thus ascertained that the children of Catharine are those intended, the others must necessarily be excluded, for the reason that they do not fall within the general description of children according to the vocabulary of the testator.

Upon the whole I think that the judgment, with the modifications suggested, should be affirmed, with costs to the respondents, to be paid out of the estate.

BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Judgment affirmed, and modified in accordance with opinion.